**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 4 1999**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

COLLEEN WHITEHEAD, an
individual and as a representative of
unknown members of the class; FRED
BLAYLOCK; and BARNEY
TAYLOR,

     Plaintiffs-Appellants,

v.

OKLAHOMA GAS & ELECTRIC
COMPANY, sued as: Oklahoma Gas
Electric, an Oklahoma corporation;
OKLAHOMA GAS AND ELECTRIC
RETIREMENT PLAN, separately and
H.L. Grover, Irma Elliot, Rob
Schmid, in their capacities as members
of the Oklahoma Gas and Electric
Retirement Plan Committee; H. L.
GROVER, individual; IRMA ELLIOT,
individual; and ROB SCHMID,
individual,

     Defendants-Appellees.

No. 97-5233

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 94-C-682-H)**

---

Jody R. Nathan, Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma
(Joseph R. Farris, Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma and
Jean Walpole Coulter, Jean Walpole Coulter & Associates, Tulsa, Oklahoma, with
her on the briefs) for Plaintiffs-Appellants.

Deborah H. Bornstein, Gardner, Carton, Douglas, Chicago, Illinois (John A. Simon, Gardner, Carton, Douglas, Chicago, Illinois and Roberta Browning Fields, Rainey, Ross, Rice, Binns, Oklahoma City, Oklahoma, with her on the briefs), for Defendants-Appellees.

---

Before **BRORBY, BARRETT** and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

## I.

The three individually named appellants in this suit, Colleen Whitehead, Fred Blaylock, and Barney Taylor (collectively, "Appellants"),[1] were long-time employees of Defendant-Appellee Oklahoma Gas & Electric ("OG&E"), who had left OG&E for a period of time and subsequently were rehired. Whitehead was first hired on June 3, 1957, fired on September 5, 1969 due to her pregnancy, and rehired July 16, 1973. Blaylock was hired on March 11, 1963, quit on August 29, 1969 to pursue further education, and returned to full time employment with OG&E on November 16, 1970. Taylor was hired on April 16, 1956, left OG&E

---

[1] Although the caption in this appeal refers to Whitehead "as a representative of unknown members of the class," a class has never been certified in this case. Appellants' counsel agreed at oral argument that the district court's dismissals and summary judgments for defendants were "on an individual basis" and therefore that the party plaintiffs in this appeal were the Appellants only as individuals.

when he was called up for active service in the United States Army Reserves on October 1, 1961, and returned to full time employment at OG&E on August 15, 1962.

On May 17, 1994, as part of a reduction in workforce, OG&E offered a Voluntary Early Retirement program ("Offer") to its employees, including Appellants, who were at least fifty years old and had at least five years of service with the company.[2] The Offer provided enhanced pension benefits, but required the employees to execute a complete release of all claims against OG&E. The deadline for accepting the Offer was July 8, 1994. Critically, for the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., issues on this appeal, the Retirement Committee construed the Offer in conjunction with the relevant pension plan as calculating retirement benefits for the Appellants from the date each was last re-employed with OG&E, and not from the date of their original employment. In other words, the length of employment before the Appellants' temporary breaks in service from OG&E was not bridged. The defendants' refusal to bridge the time Appellants worked for OG&E before their departures and subsequent rehiring, the Appellants contend, contradicts the 1993 summary plan description ("SPD"), which was in effect at the time the Offer was made in 1994, but which admittedly was not in effect at the time each

---

[2] Appellants allege they received the Offer on or about May 20, 1994.

Appellant left OG&E and then rejoined the company. Appellants argue that defendants thereby violated ERISA by their interpretation of Appellants' retirement rights.

Because resolution of most of the issues raised in this appeal turn on the procedural posture of the Appellants' cases, we outline the facts detailing their interactions with the defendants.

### A. Colleen Whitehead

On May 24, 1994, after receiving the Offer, Whitehead wrote to the retirement plan administrator, Harvey Harris, requesting credit for her employment before her initial termination by OG&E. Whitehead's request was denied on July 1, 1994. She was advised that she had sixty days to submit additional evidence asking for a review of the issue, or to appear before the Retirement Committee, but no such actions followed. Instead, on that same day, Whitehead wrote back to Harris, requesting an extension of time to accept the Offer. On July 6, Whitehead wrote another letter to Harris, this time requesting from the Retirement Committee an exemption from the requirement that she sign a release of all claims as a term of accepting the Offer. Both the July 1 and July 6 requests were denied in a letter dated July 8, in which Whitehead was again informed of her right to appeal her service credit determination. Once again, no such appeal followed.

On July 8, Whitehead filed a petition for and received a temporary restraining order enjoining OG&E from withdrawing the Offer on that day, as originally planned. On July 29, the court issued a preliminary injunction which prevented OG&E from withdrawing the Offer from Whitehead "and other persons similarly situated, with a break in service due to pregnancy, who have denied years of service under the [Offer] earned prior to a break in service." The preliminary order, though never formally dissolved, remained in effect until August 23, 1994, when defendants' motion to dismiss was granted and Whitehead received twenty days to amend her complaint. During the entire time that the injunctions were in effect, Whitehead never administratively appealed, as she was informed to do, the Retirement Committee's prior refusal to bridge her years of service. Instead, she accepted a promotion within OG&E, and decided not to retire.

Unfortunately, on January 23, 1996, while still working for OG&E and while her suit was pending in the district court below, Whitehead was killed in an automobile accident. Whitehead's daughter, Beth Ann Whitehead, filed a motion to substitute herself as a party in interest, but the magistrate and the district court did not rule on the motion because summary judgment and dismissal was recommended and granted in favor of defendants on all of Colleen Whitehead's claims.

### B. Fred Blaylock

On May 27, Blaylock wrote to Harris requesting that Blaylock's employment with OG&E, before he left to pursue a master's degree, should have been bridged. On June 29, 1994, Harris turned down that request, and informed Blaylock of the right within ninety days to submit additional evidence asking for a review of the claim or to appeal before the Retirement Committee. On July 5, Blaylock wrote a letter to the Retirement Committee Members, asking for an extension of time to accept the Offer in order to provide more time to go through OG&E's appeals process. Having received no reply from OG&E by July 8, the deadline for accepting the Offer, Blaylock wrote a letter to Harris and the members of the Retirement Committee in which he indicated his decision to sign the release and separation agreement in order to receive his early retirement benefits. The agreement was thereafter signed and executed.

### C. Barney Taylor

Barney Taylor accepted the Offer, and signed the release and separation agreement on July 6, 1994. Prior to signing the release and separation agreement, Taylor had not contacted anyone at OG&E to try and get credit for his prior years of service or to get an extension of time to consider the Offer.

\* \* \*

Appellants filed suit, arguing, in relevant parts, that the failure to recognize their initial years of employment prior to their departures and subsequent rehiring violated ERISA; that the release signed by Blaylock and Taylor violated the Older Workers Benefit Protection Act ("OWBPA"); that OG&E's actions pertaining to Taylor violated the Veterans' Reemployment Rights Act; and that Whitehead's Title VII claim, which had been dismissed as time-barred by the district court in a previous action, should be reinstated. Defendants filed a motion to dismiss the OWBPA and Title VII claims, and a motion for summary judgment on the ERISA and Veterans' Reemployment Rights Act claims. The district court adopted the Magistrate's Report and Recommendation that had recommended granting the defendants' motions in their entirety. This appeal followed.

**II.**

We review the grant of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c). Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "We review de novo a district court's dismissal of a cause of action for failure to state a claim upon which relief can be granted." Chemical Weapons Working Group, Inc. v. United States Dep't of the Army, 111 F.3d 1485, 1490 (10th Cir. 1997).

**A. ERISA Denial of Benefits Claims**

On appeal, Appellants argue that defendants violated terms of the plan itself, which, under 29 U.S.C. § 1132(a)(1)(B), allows Appellants to file a cause of action to seek monetary benefits and enforcement of their rights under the terms of the plan.[3] The district court granted summary judgment in the defendants' favor because Taylor and Whitehead had not exhausted their administrative remedies, and because the Retirement Committee's refusal to bridge Whitehead's and Blaylock's prior employment was neither arbitrary nor capricious. As to the ERISA claim, we affirm the district court's judgment as to Taylor and Blaylock, and dismiss Whitehead's claim as moot.

### 1. Colleen Whitehead

Following Whitehead's untimely death on January 23, 1996, Whitehead's daughter, Beth Ann Whitehead, filed a motion in the court below to substitute herself as a party in interest. Having recommended and granted summary judgment and dismissal in favor of defendants on all of Colleen Whitehead's

---

[3] Section 1132(a)(1)(B) empowers a participant or beneficiary to file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

claims, the court below decided not to rule on the pending substitution motion. Appellants have not filed on appeal in this court a motion to substitute parties.

Defendants argue that Colleen Whitehead's death renders her appeal moot. The defendants contend that, for example, a claim for retirement benefits cannot survive the death of an employee, such as Colleen Whitehead, who at the time of death had not retired. Appellants respond by stating that Whitehead's Title VII claim in any event survives her death, and that her ERISA claims are not moot if this court were to abate the appeal to permit Colleen Whitehead's daughter, Beth Ann, to substitute as a party. Appellants contend that if Beth Ann were allowed to substitute as a party, a live case or controversy regarding the ERISA claim would be present because, under a different section of her mother's retirement plan, Beth Ann is the beneficiary of the plan's death benefits, and the defendants' calculation of years of service to determine retirement income affects the death benefits Beth Ann receives as the beneficiary.[4]

---

[4] Appellants also argue that defendants "cannot now claim . . . mootness" because they "have not timely appealed the District Court's order or preserved any issues on appeal by a timely objection to the Magistrate's order." This argument has no merit. A cross appeal is unnecessary to advance an argument to affirm the decision appealed, see Hansen v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor, 984 F.2d 364, 367 (10th Cir. 1993), and jurisdictional issues, such as mootness, can be heard without a cross appeal, see Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1227-28 (10th Cir. 1997).

As to the ERISA claims, Appellants arguments are unavailing. As brought by Colleen, there is no doubt that her ERISA claims are presently moot. "The mootness of [appellants'] claim at the present stage of the proceedings must be assessed on the basis of what that claim is." Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 119 S. Ct. 1961, 1966 n.2 (1999). Here, Colleen Whitehead's claim is that the defendants improperly denied her retirement benefits and breached fiduciary duties to her by refusing to bridge her prior years of employment for purposes of calculating her retirement benefits. However, Colleen Whitehead never retired from OG&E and her subsequent death precludes any possibility of her future retirement from OG&E. In 1994, Colleen Whitehead did not accept the Offer, choosing instead to accept a promotion within OG&E and to remain at OG&E in the higher position for an additional one and one-half years until her death. At the time of her death, Colleen Whitehead was still an employee of OG&E. Thus, Colleen Whitehead never became entitled to retirement benefits and, indeed, she never even alleged in her Amended Complaint that she would have chosen her retirement benefits had they been enhanced by bridging to include her prior employment, over the continuing benefits from her new and higher job at OG&E. As a result, her claim is moot because her injury is not "likely to be redressed by a favorable judicial decision." Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quotation omitted).

Appellants' request that we abate the appeal to permit proper substitution of Beth Ann does not cure the mootness concerns. Even if Beth Ann might personally have a contingent claim for death benefits under Colleen Whitehead's pension plan, the fact is that the Amended Complaint did not assert a claim for Beth Ann's death benefits. Whatever avenue might remain available for Beth Ann to assert her own personal claim, she cannot by seeking to substitute for her deceased mother now add her personal claim to the claim for retirement benefits asserted by Colleen Whitehead.[5] And, as to Colleen Whitehead's claim under ERISA for retirement benefits, the fact remains that she never retired and cannot, because of her death, ever retire in the future. Thus, whether or not Beth Ann was to be substituted for Colleen Whitehead, this claim is moot.

2. Barney Taylor

The district court dismissed Taylor's ERISA claims for being unexhausted because Taylor, as he admitted, never submitted a claim of any kind to the Retirement Committee for consideration before accepting the Offer. Appellants appeal, arguing that the SPD did not require exhaustion, and that any failure to exhaust should be excused. We find neither of these arguments persuasive.

---

[5] In any event, we note that the record is bereft of any evidence that Beth Ann actually possesses a current and valid claim for derivative or contingent benefits under Colleen Whitehead's pension plan.

- 11 -

As to the futility exception, this argument is waived because Appellants never raised it in their objection to the Magistrate's Report and Recommendation, and the Magistrate found that neither Taylor nor Whitehead had a valid futility argument. Instead, Appellants only argued to the district court that exhaustion was not required because the SPD did not require it. Appellants nowhere mentioned futility in their objections. This court has "adopted a firm waiver rule when a party fails to object to the findings and recommendations of the magistrate. Our waiver rule provides that the failure to make timely objection to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991) (citations and footnote omitted).

As to the argument that the SPD does not require exhaustion, which was preserved below, it makes no difference whether the SPD itself explicitly requires exhaustion, because ERISA exhaustion is a judicial, not contractual, doctrine. Although ERISA contains no explicit exhaustion requirement, we have held that "exhaustion of administrative (i.e., company or plan-provided) remedies is an implicit prerequisite to seeking judicial relief." Held v. Manufacturers Hanover Leasing Corp., 912 F.2d 1197, 1206 (10th Cir. 1990).

> This proposition derives from the exhaustion doctrine permeating all judicial review of administrative agency action, and aligns with ERISA's overall structure of placing primary responsibility for claim resolution on fund trustees. Otherwise, premature judicial interference with the

- 12 -

interpretation of a plan would impede those internal processes which result in a completed record of decision making for a court to review.

McGraw v. Prudential Ins. Co. of America, 137 F.3d 1253, 1263 (10th Cir. 1998) (citations omitted).  The doctrine "is necessary to keep from turning every ERISA action, literally, into a federal case."  Denton v. First Nat'l Bank of Waco, Texas, 765 F.2d 1295, 1300 (5th Cir. 1985).  Because the exhaustion requirement is not rooted in the particular language of an ERISA plan, Appellants cannot rely on the permissive language in OG&E's SPD to excuse a failure to exhaust.  See also Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 873 (7th Cir. 1997) ("The plan also contains a provision, however, that no suit may be brought until the 'completion of the ERISA claim appeal process,' which is to say until the exhaustion of the plaintiff's internal remedies.  Even without this provision, the plaintiff, as a matter of the federal common law of ERISA, would be required to exhaust his ERISA-required internal remedies before being allowed to sue.") (citations omitted).[6]

As a result, the dismissal of Taylor's ERISA claim for failure to exhaust is affirmed.

_____

[6] Given the relevant permissive language of OG&E's SPD, we do not comment upon the applicability of the exhaustion doctrine when an SPD affirmatively states that exhaustion is not required.

3. Fred Blaylock

The district court eschewed the exhaustion requirement for Blaylock by assuming, without deciding, that his exhaustion of OG&E's internal remedies would have been futile, and instead rejected Blaylock's claim on the merits, concluding that the retirement committee's decision not to bridge benefits was a reasonable interpretation of the plan document and SPD. We have reviewed the record and the Magistrate's report and recommendation and we agree with the Magistrate's conclusions therein that the decision to deny benefits to Taylor was based on a reasonable interpretation of the plans and the 1993 SPD and that decision was neither arbitrary nor capricious.[7] Accordingly, we affirm the denial of Blaylock's ERISA claim in this regard.

**B. The Older Workers Benefit Protection Act**

Appellants next argue that the releases signed by Taylor and Blaylock, prerequisites to accepting the Offer, violate the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act ("OWBPA"). Specifically, Appellants assert that the releases violated the

---

[7] We are satisfied that the Retirement Committee did not possess such a financial interest in the administration of the plan such that any lesser standard of review should be applied. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

OWBPA by not giving Taylor and Blaylock the required forty-five days in which to decide if they wanted to accept the Offer. Although Appellants had at least forty-five days after receipt of the Offer before they needed to accept or reject it, they argue that they had insufficient time to accept or reject the Offer after the defendants rejected their request to bridge benefits to include their prior work experience. Appellants then argue that the insufficient time rendered the release not knowingly and voluntarily signed. To remedy OG&E's alleged violation of the OWBPA, Appellants asked the court below to negate the signed waiver, to require OG&E to apply all years of service to the benefit calculations for the pension plan, and to award punitive damages. The district court, principally relying on EEOC v. Sears, Roebuck and Co., 883 F. Supp 211 (N.D. Ill. 1995), dismissed the claim and held that Appellants cannot maintain a separate cause of action based solely on an OWBPA violation. We affirm.

In 1990, Congresses amended the ADEA by passing the OWBPA, which states, in relevant part: "An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary . . . . [A] waiver may not be considered knowing and voluntary unless at a minimum" it satisfies certain enumerated requirements. 29 U.S.C. § 626(f)(1). Those enumerated requirements, in relevant parts, include giving each employee "a period of at least

45 days within which to consider" an exit incentive or other employment termination program. 29 U.S.C. § 626(f)(1)(F)(ii).

Neither parties dispute that the OWBPA's establishment of minimum waiver requirements can be a shield for plaintiffs in an ADEA action when an employer invokes the waiver as an affirmative defense. An invalid waiver in an ADEA suit means that the plaintiff has not, as a matter of law, waived his or her rights to bring a separate ADEA claim. The issue we decide on appeal is whether the waiver provisions also are swords that provide plaintiffs with an independent cause of action for affirmative relief, other than declaratory or injunctive relief to negate the validity of the waiver, as it applies to an ADEA claim.

The Supreme Court has made it clear that the "OWBPA governs the <u>effect</u> under federal law of waivers or releases <u>on ADEA claims</u> . . ." <u>Oubre v. Entergy Operations, Inc.</u>, 522 U.S. 422, 427 (1998) (emphasis added); <u>see also</u>, <u>id.</u> at 426-27 ("The statutory command is clear: An employee 'may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements."); <u>id.</u> at 428 ("The statute governs the effect of the release on ADEA claims . . . ."); <u>Lockheed Corp. v. Spink</u>, 517 U.S. 882, 894 n.6 (1996) ("The Older Workers Benefit Protection Act . . . establishes requirements for the enforceability of employee waivers of ADEA claims made in exchange for early retirement benefits."). This language strongly indicates that the OWBPA simply determines

whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim. The OWBPA does not, by itself, determine in the first instance whether age discrimination has occurred. Indeed, Appellants have not cited a single case in which a court has held otherwise. Moreover, the legislative history of the OWBPA clearly distinguishes between bringing an age discrimination suit and a claim that the OWBPA has been violated. The Senate Report accompanying the enactment of the OWBPA stated that waiver provisions of the OWBPA protect the rights and benefits of older workers by "ensur[ing] that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA." S. Rep. No. 101-263, at 5 (1990), reprinted in 1990 U.S.C.C.A.N. 1509, 1510.

Since Appellants have not asserted a separate ADEA claim, we conclude that the district court properly dismissed Appellants' claim that a violation of the OWBPA, by itself, establishes age discrimination.

## III.  Veterans' Reemployment Rights Act

Appellants' complaint under the Veterans' Reemployment Rights Act, 38 U.S.C. § 4312, concerns only Taylor, as he was the only Appellant who left employment at OG&E for military service.[8]  However, when Taylor accepted the

---

[8] The complaint refers to 38 U.S.C. § 4312 as the "Veteran Reemployment
(continued...)

Offer, he signed a release and waiver of "all claims in law or in equity that may arise under . . . the Vietnam Era Veteran's Readjustment Assistance Act of 1974." Because that release is valid, see supra; see also Leonard v. United Air Lines, Inc., 972 F.2d 155, 159 (7th Cir. 1992) ("There is no question that veterans can waive their rights to reemployment and the perquisites of seniority after their return from service."), we find Taylor's Veterans' Reemployment Rights Act claims released, and affirm the district court's grant of summary judgment for defendants.[9]

## IV.    Pregnancy Discrimination Act

The final issue we address on appeal deals with alleged pregnancy discrimination that occurred in 1969.  As to this claim, we sua sponte grant Beth Ann's request, which she had only made at the district court level, to be substituted for Colleen Whitehead.  See Yablonski v. United Mine Workers of

---

[8](...continued)
Act."  Technically, Chapter 43 of Title 38 of the United States Code is entitled "Veterans' Reemployment Rights."  The Veterans' Reemployment Rights Act is a recodification, without any textual alterations, of the Vietnam Era Veterans' Readjustment Assistance Act of 1974.  See generally Lapine v. Town of Wellesley, 970 F. Supp. 55, 58-59 (D. Mass. 1997).

[9] The district court held that Taylor's withdrawal of his contribution funds when he left for the military and his failure to return his contributions to the plan when he returned to OG&E defeated his claim under the Veterans' Reemployment Rights Act.  Because we hold that Taylor has waived this claim, we do not need to address the alternative ground for denying relief.

America, 459 F.2d 1201, 1202 (D.C. Cir. 1972). We grant that request because Colleen Whitehead's original petition had asked for damages as relief for past pregnancy discrimination acts, and such damages were characterized as independent of her now mooted retirement claim.[10]

Colleen Whitehead claims that she was discriminated against in 1969 when she was fired from OG&E for getting pregnant. The court below held this claim to be time barred. We affirm. Whitehead's pregnancy-related termination from OG&E occurred nine years before the PDA was enacted, and the PDA is not retroactive, see Schwabenbauer v. Board of Ed. of City Sch. Dist. of City of Olean, 667 F.2d 305, 310 n.7 (2d Cir. 1981); Condit v. United Air Lines, Inc., 631 F.2d 1136, 1139-1140 (4th Cir. 1980). In response, Whitehead contends that women who worked for OG&E and had been fired for pregnancy are currently being discriminated against because they "are being treated differently than the men who worked for OG&E during the same time periods, who were not forced to terminate their employment." This argument, however, compares apples to

---

[10] Colleen Whitehead's Title VII gender discrimination claim sought damages resulting from the effect that the alleged Title VII violation had on the calculation of her retirement benefits. Because, as we earlier stated, Colleen Whitehead's death has mooted her retirement claim, all of her claims seeking damages from improper retirement benefits calculation, such as this Title VII claim, are also rendered moot. In any event, Whitehead's Title VII sex discrimination claim is time barred under United Air Lines, Inc. v. Evans, 431 U.S. 553 (1977).

oranges. The proper comparison group for Whitehead's claim would be men who also stopped working for OG&E during the same time periods. Such men, like Taylor and Blaylock, have not had their prior time of employment bridged, just like Whitehead. Accordingly, Whitehead has not in any event properly alleged a PDA violation.

## CONCLUSION

Whitehead's appeal of her ERISA denial of benefits and Title VII claims is DISMISSED as moot, and in every other regard, we AFFIRM the district court.