Piascik-Lambeth v. Textron Automotive CV-00-258-JD  12/22/00
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Susan C. Piascik-Lambeth

   v.                                   Civil No. 00-258-JD
                                         Opinion No. 2000 DNH 264
Textron Automotive Company, Inc.


O R D E R


The plaintiff, Susan C. Piascik-Lambeth, brings suit against her former employer, Textron Automotive Company, Inc., alleging claims of age and gender discrimination, violation of the Older Workers Benefit Protection Act ("OWBPA"), intentional discrimination in violation of 42 U.S.C.A. § 1981, breach of contract, and wrongful discharge.  Textron moves to dismiss her claims, and alternatively moves to strike certain allegations in the complaint.  The plaintiff objects to Textron's motion except as to her claims for intentional discrimination under § 1981 and for wrongful discharge.  The court deems the plaintiff's silence as acquiescence in the dismissal of her claims under § 1981 and for wrongful discharge.[1]

---

[1]The court dismisses the plaintiff's claim based on 42 U.S.C.A. § 1981 and her claim for wrongful discharge for the reasons stated in the defendant's motion.

## Standard of Review

The defendant submitted supplemental materials in support of the motion to dismiss. The supplemental materials pertain to the defendant's affirmative defense based on a release, the discrimination claims, the breach of contract claim, and the motion to strike. In response, the plaintiff filed her own affidavit and materials pertinent to her claims. The defendant argues that all of the supplemental materials may be considered in the context of a motion to dismiss under Watterson v. Page, 987 F.2d 1 (1st Cir. 1993). The parties' submissions, however, go beyond the narrow exceptions discussed in Watterson. See id. at 3-4.

Materials extrinsic to the complaint should not be considered unless the motion to dismiss is converted to one for summary judgment. See id. at 3; see also Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 31-32 (1st Cir. 2000). A motion to dismiss cannot be converted, however, unless the opponent is given adequate notice and an opportunity to present pertinent materials. See Collier v. Chicopee, 158 F.3d 601, 603 (1st Cir. 1998). When parties file additional materials, including affidavits, with or in response to a motion to dismiss, they invite conversion and have implicit notice that the submitted materials will be considered. See id.; see also

2

Rubert-Torres v. Hosp. San Pablo, Inc., 205 F.3d 472, 476 (1st Cir. 2000).

Given the expanded record presented by both parties for the court's consideration and their opportunity to respond to the filings, the motion is partially converted to one for summary judgment. The part of the motion to dismiss based on the affirmative defense of the release is based upon materials that are extrinsic to the complaint and will be treated as a motion for summary judgment. The remainder of the motion will be treated as a motion to dismiss. The other extrinsic materials submitted will not be considered except for the August 10, 1989, memorandum which will be considered for purposes of addressing the breach of contract claim. See Watterson, 987 F.2d at 3.

## Background[2]

The plaintiff was employed by Textron or its predecessor from 1965 until 1998. She began as a factory worker but moved to the data entry department in 1983. As part of a conversion of the data entry department that began in 1987, everyone in the department was notified that they would be laid off by 1989. On August 10, 1989, the plaintiff, along with the five other

---

[2]The background information provided here is taken from the record and does not constitute findings of fact. See Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

employees who remained in the data entry department, received a memorandum, titled "Happy Ending to a Long Story," that offered "permanent assignment" to another position in the company at the completion of the current assignment.

The plaintiff accepted the offer. She moved from data entry to accounts payable in 1991, in the position of accounts payable administrator. In 1994, she was transferred to the Tooling and Equipment Group, where her supervisor was Patricia Canavan. Canavan complained that the plaintiff's salary added to her department's budget. Canavan was unpleasant and abusive toward the plaintiff, and the plaintiff's previously good performance reviews deteriorated. Canavan favored the plaintiff's younger co-workers and excluded the plaintiff from staff meetings and celebrations. Canavan harassed and verbally abused the plaintiff and another older co-worker, a male. The plaintiff reported at least some of Canavan's actions to the human resources department. After 1997, Canavan was no longer the plaintiff's supervisor.

On September 24, 1998, the plaintiff received a notice from the human resources department announcing a reduction in force that was anticipated to include the elimination of the plaintiff's job as of December 15, 1998. The plaintiff remained in the position of accounts payable administrator when she

4

received notice of the reduction in force.  An opening for a position of plant accountant was posted on October 27, 1998.  The plaintiff was not encouraged to apply and did not apply for the position.  A young man in his twenties was hired for the position, and the plaintiff was asked to help train him.

On December 2, 1998, the plaintiff was notified that her last day of work would be December 18, 1998.  She was presented with a release agreement which stated that she released and discharged the defendant from all actions and causes of action "in consideration of the settlement and payment of $13,250.12." The plaintiff signed the release on December 16, 1998, and her last day of work was December 18.  The plaintiff was fifty-two years old when her employment was terminated.  The plaintiff received the payment as provided in the release.

The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on July 19, 1999, and filed an amended charge in September of 1999.  She received a right to sue letter from the Commission on February 25, 2000. The plaintiff filed suit on May 24, 2000, alleging violation of the Age Discrimination in Employment Act, 29 U.S.C.A. § 621, et seq. ("ADEA"); violation of the Older Workers Benefits Protection Act, 29 U.S.C.A. § 626(f), ("OWBPA"); violation of 42 U.S.C.A. § 2000e (Title VII of the Civil Rights Act of 1964); intentional

discrimination under 42 U.S.C.A. § 1981; breach of contract, and wrongful discharge.  As noted above, the plaintiff no longer presses her claims under § 1981 and for wrongful discharge, and those claims are dismissed.

## Discussion

The defendant moves to dismiss the plaintiff's claims, except the ADEA claim, based on the release and moves to dismiss the ADEA claim on the ground that the plaintiff has not stated a prima facie case of age discrimination.  Alternatively, the defendant moves to dismiss the OWBPA claim, contending no cause of action for damages exists under the Act and moves to dismiss the Title VII claim on the same grounds as the ADEA claim.  The defendant moves to dismiss the breach of contract claim on the ground that the memorandum, on which the plaintiff relies, did not alter her at-will employment status.

## A.  The Release

As noted above, the defendant's motion with respect to the affirmative defense based on the release is converted to a motion for summary judgment due to the extrinsic materials submitted by the parties.  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and

6

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). A party opposing a properly supported motion for summary judgment must present record facts showing a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The release agreement signed by the plaintiff provides as follows:

> I, Susan Piascik-Lambeth, in consideration of the settlement and payment of $13,250.12 paid to me over the time period of 26 weeks commencing upon signing of this agreement, hereby acknowledged, do hereby release and forever discharge TEXTRON Automotive Company, its parent corporation, and all related corporations (hereinafter referred to as the "companies") and the officers, directors, servants, and agents of the Companies, from any and all actions, causes of action, claims and demands for damages, loss or injury, howsoever received, whether such may hereafter be sustained by me in consequence of my employment or termination of my employment with Companies, including all damage, loss and injury not now known or anticipated but which may arise in the future and all effects and consequences thereof.

> I have read over the above Release and understand it is

7

> a full and final Release of all claims against the
> Companies and persons covered by this Release arising
> out of my employment and termination of my employment.

The parties agree that the release does not apply to the plaintiff's claim brought under the ADEA. See 29 U.S.C.A. § 626(f); Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-27 (1998). The plaintiff also contends that the release does not apply to her claim brought under the OWBPA, which regulates waivers of ADEA claims. In addition, the plaintiff contends that the release is not enforceable for lack of consideration.

A release agreement, like any contract, must be supported by separate and adequate consideration. See, e.g., Hinchey v. NYNEX Corp., 144 F.3d 34, 142-43 (1st Cir. 1998); Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 12 n.4 (1st Cir. 1997); Chasan v. Village Dist. of Eastman, 128 N.H. 807, 816 (1986); Steinfield v. Monadnock Mills, 81 N.H. 152, 154 (1923). Under both federal and state law, the proponent of a release, as a defense to a claim, bears the burden of proving the effectiveness of the release. See, e.g., Rivera-Flores, 112 F.3d at 12; Gagnon v. Lakes Region Gen. Hosp., 123 N.H. 760, 765 (1983).

The plaintiff contends that the release agreement was not supported by consideration because she was entitled to the same severance pay without the release agreement. Although the

8

plaintiff offers little developed argumentation on the question of consideration for the release, the "Separation Allowance Authorization," sent to the plaintiff in 1987 and submitted with her affidavit, raises a question as to whether she would have been entitled to the same twenty-six weeks of severance pay if she had not signed the release agreement. Specifically, the Separation Allowance Authorization refers to "the Corporate Termination Allowance Policy" and outlines both the "Base Separation Pay" and the "Full Term Allowance" that the plaintiff would have received if her termination had occurred in 1989.

The "Base Separation Pay" appears to have been calculated using the number of years of service and age although the amount appears to equal the amount of thirteen weeks of pay. The "Full Term Allowance" appears to be twenty-six weeks of pay, plus payment for unused vacation time. The Authorization further explains that "Total Separation Allowance Pay may be up to 6 Months of base salary." The "Separation Allowance Authorization" does not include or even refer to a release.

The defendant notified the plaintiff of her employment termination and severance entitlement in a letter dated December 2, 1998, which is included in the record. The letter states that the plaintiff is entitled to severance pay of an amount that is equal to twenty-six weeks of pay plus compensation for unused

9

vacation time. The letter further states that any severance entitlement is contingent upon the plaintiff signing the release. The letter does not explain whether the "Corporate Termination Allowance Policy," referenced in the 1987 "Separation Allowance Authorization," was still in effect.

Although the evidence supporting the plaintiff's position is not well developed, the court concludes that the record, as presented, with reasonable inferences taken in the plaintiff's favor, leaves disputed facts as to whether the plaintiff received separate and adequate consideration for the release. Therefore, the defendant has not shown that it is entitled to summary judgment based on the release.

B. OWBPA Claim

The plaintiff brings a claim under the OWBPA, contending that the defendant violated the Act because the release did not comply with the requirements of 29 U.S.C.A. § 626(f)(1). In particular, the plaintiff alleges that the release not adequately notify her of her rights, did not advise her of her right to retain counsel, did not give her an adequate opportunity to review the release, did not give adequate consideration, and did not notify her of her ability to revoke the release. The plaintiff seeks damages for the violation. The defendant moves

10

to dismiss the claim on the ground that the OWBPA does not provide a separate cause of action.

All but one of the courts that have considered whether § 626(f)(1) provides a separate cause of action for affirmative relief have concluded that it does not. See, e.g., Whitehead v. Okla. Gas & Elec. Co., 187 F.3d 1184, 1191-92 (10th Cir. 1999); Kapossy v. McGraw-Hill, Inc., 921 F. Supp. 234, 250 n.18 (D.N.J. 1996); E.E.O.C. v. Sara Lee Corp., 923 F. Supp. 994, 999 (W.D. Mich. 1995); Williams v. Gen. Motors Corp., 901 F. Supp. 252, 254 (E.D. Mich. 1995); E.E.O.C. v. Sears, Roebuck & Co., 883 F. Supp. 211, 215 (N.D. Ill. 1995). In Commonwealth of Massachusetts v. Bull HN Info. Sys., 16 F. Supp. 2d 90, 105-07 (D. Mass. 1998), the court upheld a separate cause of action under § 626(f)(1) for declaratory or injunctive relief in a suit brought by the Commonwealth of Massachusetts, challenging the validity of waivers that had been signed by the defendant's laid-off employees. The court in Bull determined that the broad enforcement scheme provided in § 626(c) permitted an action by the Commonwealth under the OWBPA for declaratory and injunctive relief. See id. at 105, 107.

The plaintiff in this case seeks damages for a violation of the OWBPA, rather than declaratory or injunctive relief. Therefore, the result in Bull is not directly applicable here.

11

The plaintiff has made no argument that § 626(c) is sufficiently broad to permit her claim for damages for violation of the requirements of § 626(f)(1).

Section 626(c) provides a cause of action to "any person aggrieved" to bring suit "for such legal or equitable relief as will effectuate the purposes of this chapter." The stated purposes of the chapter are "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C.A. § 621(b). As the court noted in Whitehead, § 626(f) does not by itself address age discrimination in employment. See Whitehead, 187 F.3d at 1191. Instead, "the OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim." Id.

Here, the parties agree that the release signed by the plaintiff does not bar her ADEA claim. Given the purposes of the ADEA, the court concludes that § 626(c) does not provide a separate cause of action seeking damages for violation of § 626(f)(1) in the context of this case.

C. Discrimination Claims

12

The plaintiff brings claims alleging both age and gender discrimination. The defendant's motion as to those claims is treated as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and the extrinsic materials submitted by the parties are not considered in deciding the motion.

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court takes all well-pleaded facts in the complaint as true and draws all reasonable inferences in the plaintiff's favor. See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 40 (1st Cir. 1998). The court does not credit legal conclusions or "'subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts.'" Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992)). To avoid dismissal, the plaintiff must allege facts as to each element of an actionable legal theory. See Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).

To state a prima facie claim of age and gender discrimination in the context of a reduction in force, the plaintiff must allege facts that show that she is a member of a protected class, that she met her employer's legitimate job expectations, that she was terminated, and that gender and age

13

were not treated neutrally or that males or younger workers were retained in the same position. See Alvarez-Fonseca v. Pepsi Cola, 152 F.3d 17, 24 (1st Cir. 1998); Lawton v. State Mut. Life Assurance Co., 924 F. Supp. 331, 342 (D. Mass. 1996). The plaintiff bears the burden of making a prima facie case of discrimination, a burden that is not considered to be onerous. See Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 334 (1st Cir. 1997). The defendant challenges only the fourth element of the plaintiff's prima facie case, contending that the plaintiff cannot show that either male or younger workers were retained in the plaintiff's position.

In response, the plaintiff argues that she was replaced by a younger male employee, who had been hired from outside the company. The plaintiff does not contest that she was discharged as part of a reduction in force. She alleges that her "position was combined with another position, that of Plant Accountant, some of whose duties plaintiff had performed during the previous seven years when necessary."

In a reduction in force case, "'[a] discharged employee is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. Rather, a person is replaced only when

14

another employee is hired or reassigned to perform plaintiff's duties.'" Hidalgo, 120 F.3d at 334 n.6 (quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 846 (1st Cir. 1993)) (further internal quotation omitted).

Based upon the plaintiff's allegations, the defendant hired a young man in his twenties for the position of plant accountant. At the time her employment was terminated, the plaintiff was an accounts payable administrator. She does not contend that plant accountant and accounts payable administrator were the same job. Instead, she alleges that her position was combined with the plant accountant position. Therefore, the newly hired plant accountant assumed some of the plaintiff's duties along with the other duties of that position.

In a reduction in force case, the plaintiff can alternatively show that the circumstances of her discharge imply discrimination. See Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 28 (1st Cir. 1998). The plaintiff's allegations, however, do not show that the defendant failed to treat age and gender neutrally in implementing the reduction in force. She alleges that at the time of the reduction in force, eighty-eight people were in the plaintiff's division. Of those, forty-one were notified that they would be discharged and approximately half of those were over the age of fifty. The plaintiff does not allege

15

the gender of any of the employees, and she does not allege the ages of those employees retained in the division after the reduction in force. See, e.g., Watkins v. Sverdrup Tech., Inc., 153 F.3d 1308, 1315-16 (11th Cir. 1998) (discussing use of statistical evidence of discrimination in reduction in force); Lawton, 924 F. Supp. at 343 (same). The plaintiff's allegations are insufficient to permit even an inference that the defendant failed to treat age or gender neutrally in the reduction in force.

Because the plaintiff has not alleged facts to show that the defendant's reduction in force retained males or younger employees in the same position she held or that the defendant failed to treat gender and age neutrally, she has not carried her burden to establish the fourth element of a prima facie case of discrimination.[3] Therefore, the defendant's motion to dismiss is granted as to the plaintiff's ADEA and gender discrimination claims.

D. Breach of Contract

------------------------------

[3]The plaintiff's opposition to the defendant's motion to dismiss adds nothing to the conclusory allegations in her complaint. See Murphy, 45 F.3d at 522 (holding that the court does not credit "subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts.")

16

The plaintiff alleges that the defendant's memorandum titled "A Happy Ending To A Long Story," dated August 10, 1989, and "further representations and promises" (which are not pled in the complaint) constitute a contract of employment. She alleges that the defendant breached the contract "by failing to provide plaintiff with permanent full time employment on an ongoing basis and by discharging her in violation of her federally protected rights." The defendant moves to dismiss the breach of contract claim, contending that the memorandum did not alter the plaintiff's status as an employee at will.

An at-will employment relationship, under New Hampshire law, exists when, in the absence of an applicable employment contract provision, each party is free to end the employment relationship at any time with or without cause. See Cloutier v. A. & P. Tea Co., Inc., 121 N.H. 915, 919 (1981). When no provision for the duration of employment is made in a contract, the employment relationship status is presumed to be at-will. See Butler v. Walker Power, 137 N.H. 432, 435 (1993); accord Nat'l Employment Serv. Corp. v. Olsten Staffing Serv., Inc., 2000 WL 1145253 (N.H. Aug. 15, 2000) (page references not available). An employer's unilateral notice to provide new or enhanced employment benefits for at-will employees is an offer to modify their existing relationship. See Panto v. Moore Bus. Forms, Inc., 130 N.H. 730,

17

731 (1988). An employee accepts the offer by her continued performance of her duties. <u>See</u> <u>id.</u>

From 1987 until the August 10, 1989, memorandum was issued, the plaintiff along with the other employees in her department were scheduled to have their employment terminated in 1989. The August 10 memorandum provides as follows:

> In a continuing analysis of the "scheduled-separation' dilemma, Management has agreed to a final resolution that I'm delighted to bring to you.
>
> For all six remaining, permanent, full-time employees listed above, who have been scheduled for eventual employment separation due to the IBM to VAX conversion:
>
> 1. Eliminate immediately, any prospect of termination associated with this conversion.
>
> 2. Assure each of you, permanent assignment to another job opportunity, upon final completion of our current task to phase out the IBM equipment.
>
> 3. There will be no reduction in your pay rate in this reassignment (although there may be some limitation of additional increases if your current rate is substantially greater than the published grade level for the new position.) This would be determined on an individual basis as encountered.
>
> 4. If, within a six-month period after such reassignment, the new position is not to your satisfaction, you will have the option of exercising the full Separation Agreement as it exists today.
>
> 5. In token compensation for our stressful working environment these past two years, you will receive a one-time payment of $1,000.00 which I will enjoy presenting to each of you personally within the next 10 days.
>
> This action is possible, in part, because we now have a

18

better perspective of projected work loads and task requirements in the VAX/CSI environment. We see more clearly, the emergence of several functions similar, in many respects, to those now accomplished on IBM and the obvious benefits in reorienting experienced data processing personnel to the new hardware.

As these situations surface, we will offer training and instruction as required. Other assignments may be available through attrition.

With this decision, I hope we can begin to re-build the stability of our group and cope with the many physical changes that must be accomplished during the final phases of this transition.

The plaintiff contends that the August 10 memorandum offered her a permanent full-time assignment to another job opportunity, which she accepted by performing her new assignment and by not taking the separation package. There is no dispute that she received the offered reassignment. The plaintiff's claim is that the defendant breached the agreement by "failing to provide her with permanent full time employment on an ongoing basis." The claim is apparently based on an interpretation of "permanent assignment" as a promise of lifetime employment.

Under New Hampshire law, the meaning of a written contract, including whether a term is ambiguous, is a question of law for the court. See Holden Eng'g & Surveying v. Pembroke Rd. Realty Trust, 137 N.H. 393, 395 (1993). The court must first determine whether the writing is a complete integration of the parties' agreement. See MacLeod v. Chalet Susse Int'l, Inc., 119 N.H.

19

238, 243 (1979). The court then interprets the agreement by giving the language its reasonable meaning in light of the circumstances and context existing at the time of the agreement and reading the agreement as a whole. See Keshishian v. CMC Radiologists, 142 N.H. 168, 177 (1997). The court interprets the parties' intent at the time they entered the agreement "by objective or external criteria rather than unmanifested states of mind of the parties." Logic Assoc. Inc. v. Time Share Corp., 124 N.H. 565, 572 (1984).

Although the plaintiff alleges that the agreement arose from the August 10 memorandum along with "further representations and promises" by the defendant, she has not alleged what or by whom such representations or promises were made. In her memorandum in opposition to the defendant's motion to dismiss, the plaintiff relies exclusively on the terms of the August 10 memorandum. Therefore, the court concludes that the memorandum included all pertinent terms of the employment agreement, as alleged by the plaintiff.

The First Circuit has held that New Hampshire would likely follow the majority rule with respect to construing contracts for lifetime employment. See Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 427 (1st Cir. 1996). It does not appear that the New Hampshire Supreme Court has addressed the question of lifetime

20

employment contracts since <u>Smith</u>.  Under the majority view, lifetime employment contracts are out of the ordinary and "an offer for lifetime employment must be expressed in clear and unequivocal terms to be enforceable."  <u>Id.</u>  The term "permanent employment" has been construed to establish only an at-will employment relationship.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Long v. Ill. Mun. Elec. Agency</u>, 90 F. Supp. 2d 181, 185-86 (D.P.R. 2000); <u>Holland v. Chubb Am. Serv. Corp.</u>, 944 F. Supp. 103, 107 (D.N.H. 1996).

The offer in the August 10 memorandum of a "permanent assignment to another job opportunity" is not an offer of lifetime employment.  Further, the context of the memorandum undermines any reasonable interpretation of "permanent assignment" to mean lifetime employment.  The memorandum was addressed to the "remaining permanent, full-time employees" in that division "who have been scheduled for eventual employment separation."  Those employees could not both be "permanent" and scheduled for employment separation if "permanent" were intended to mean "lifetime" in that context.  Nothing in the memorandum otherwise suggests that the parties intended "permanent" to mean lifetime or any other specific duration.  Therefore, the memorandum is construed as offering the plaintiff employment at-will, not for a specified duration or for a lifetime.

Since the plaintiff did not allege a contract between the

21

parties that altered her at-will employment status, she has failed to state a claim for breach of contract based on her discharge.

In summary, all of the plaintiffs claims are dismissed. As a result, the defendant's motion to strike parts of the complaint, pursuant to Federal Rule of Civil Procedure 12(f), is moot.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 6) is granted, except with respect to the affirmative defense based on the release. All of the plaintiff's claims are dismissed. The defendant's motion to strike (document no. 6) is denied as moot. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

December 22, 2000

cc:  Emily C. Rice, Esquire
     Stephen L. Tober, Esquire
     Debra Syleski-Najjar, Esquire