**Rachel AMBERS, Plaintiff,**

v.

**VILLAGE FAMILY SERVICE CENTER, INC.,
Defendant.**

**Civil File No. A2–03–04.**

United States District Court,
D. North Dakota,
Northeastern Division.

July 8, 2004.

Thomas Dayton Fiebiger, Ohnstad Twichell, Fargo, ND, for plaintiff.

Richard A. Clapp, Pearson Christensen, Grand Forks, ND, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ERICKSON, District Judge.

Before the Court is Defendant's Motion for Summary Judgment (doc. # 26). Plaintiff filed a brief in opposition (doc. # 30). Defendant filed a reply brief (doc. # 32). The Court held a hearing on July 1.

## SUMMARY OF HOLDING

In order to present a prima facie claim of retaliation under either the Age Discrimination in Employment Act (ADEA) or the North Dakota Human Rights Act (NDHRA), a plaintiff must first show that she engaged in protected activity. Under the ADEA, this protected activity must consist of conduct done to oppose age discrimination. In this case, Rachel Ambers (Ambers) did not hire a lawyer to oppose age discrimination, so she did not engage in protected activity. Even if the Court were to assume Plaintiff presented a prima facie case, the Village Family Service Center (Village) has produced complaints of employees Ambers supervised to present sufficient evidence of a legitimate nondiscriminatory reason to terminate Ambers. Ambers did not present evidence that this reason was a pretext for discrimination.

To constitute protected activity under the North Dakota Whistleblower statute, a plaintiff must report a violation or suspected violation of federal or state law. Ambers only informed her employer of the twenty-one day provision in the Older Workers Benefit Protection Act (OWBPA). However, this provision only relates to whether a waiver of an ADEA claim is knowing and voluntary. The failure of an employer to give an employee twenty-one days to consider a waiver is not a violation of the law; it merely invalidates the waiver.

## FACTS

In November 1996, Ambers began working full time as a regional director for the Village. She was hired for the Bismarck office, and her duties included supervising employees. One of the employees Ambers supervised was Jackie Johnson (Johnson).

After Johnson quit working at the Village, she wrote to the Chairman of the Village's Board. In the letter, dated May 17, 1999, Johnson mentioned several problems she had encountered with Ambers. (Def.Ex.1) Ambers had made comments about Johnson to other staff members including statements that Johnson was a communication problem in the office, that she had probably been victimized in her life, so she was trying to get co-workers to "caretake" her, and that Ambers was placing her on probation and recommending that she seek counseling. (Id.) Ambers sent Johnson an apology letter, and Gary Wolsky (Wolsky), the CEO of the Village, sent Johnson a letter acknowledging that Ambers' behavior was inappropriate.

In December 1999, Ambers moved to the Grand Forks office. One of the employees Ambers supervised there was Melissa Ruth (Ruth). On June 22, 2001, Ruth filed a grievance against Ambers. Ruth alleged that Ambers was exaggerating how late she was for meetings, Ambers was using personal information about Ruth inappropriately, and Ambers was singling her out for reprimand. (Def.Ex.2)

Wolsky hired a human resources consultant, Al Vacek (Vacek), to investigate the

grievance. When Ambers spoke with Vacek, she mentioned that she would consider leaving the Village once her pension vested. (Ambers 2–9–04 Depo. at 20–21) After learning that, Vacek's investigation turned to focus on how to get Ambers out of management but also allow her to stay with the Village so her pension could vest. (Vacek Depo. at 37; 40)

On July 25, 2001, the Village offered Ambers a clinical position that would not entail any supervisory responsibilities to allow her to stay at the Village until her pension vested. (Meshefski Depo. at 36–39) As part of this offer, Ambers would have to waive any claims under Title VII, ADEA, ADA, or state human rights laws. (Vacek Depo. Ex. 6) If she agreed to the terms of the agreement, the Village would not expand its investigation of Ambers' supervisory relationships in the Grand Forks office. (Id.) The agreement gave her five days, until July 30, to consider the offer. (Id.)

Ambers hired a lawyer, Alice Senechal, to represent her with respect to this agreement. (Ambers 2–9–04 Depo. at 33) Ambers wanted her attorney to make a couple of changes to the agreement. (Id. at 34) In a letter dated July 27, 2001, Attorney Senechal stated that Ambers would sign the agreement if certain changes were made, and she enumerated those changes. (Wolsky Depo. Ex. 10) In a letter dated July 30, Attorney Senechal further advised the Village that Ambers had twenty-one days to consider the agreement. (Wolsky Depo. Ex. 12) The Village never agreed to the changes. In the meantime, Vacek expanded his investigation to talk with other employees in the Grand Forks office. (Vacek Depo. at 69–70) On August 20, the Village terminated Ambers' employment.

On January 8, 2003, Ambers filed the present lawsuit. Plaintiff represents to this Court that her Complaint only alleges three claims. She alleges that the Village retaliated against her pursuant to the ADEA and the NDHRA. Her third claim is that the Village's conduct violated the North Dakota Whistleblower statute, North Dakota Century Code section 34–01–20.

ANALYSIS

Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists. *Mems v. City of St. Paul,* 224 F.3d 735, 738 (8th Cir.2000). The moving party bears the burden of proving that there is no genuine issue of material fact. *Id.* Summary judgment should rarely be granted in employment cases because employment claims are inherently fact based. *Keathley v. Ameritech Corp.,* 187 F.3d 915, 919 (8th Cir.1999) (quoting *Hindman v. Transkrit Corp.,* 145 F.3d 986, 990 (8th Cir.1998)). Only if the evidence could not support any reasonable inference of discrimination may summary judgment be granted. *Id.* (quoting *Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1156 (8th Cir.1999)).

I. Retaliation Under the ADEA and the NDHRA

To establish a prima facie case of retaliation under the ADEA, a plaintiff must show that: 1) she engaged in conduct protected by the act; 2) she was subjected to an adverse employment action at the time or after the protected conduct occurred; and 3) there was a causal link between the protected conduct and the adverse employment action. *Berg v. Bruce,* 112 F.3d 322, 328 (8th Cir.1997). It is likely that these same elements apply to a retaliation claim under the NDHRA. See *Schweigert v. Provident Life Ins. Co.,* 503 N.W.2d 225, 227 (N.D.1993) (stating

that there are obvious parallels between North Dakota state law and federal law and North Dakota will rely on federal law when it is helpful and sensible to do so). Therefore, the Court will apply this same analysis to Ambers' retaliation claims under the ADEA and the NDHRA.

■■ Only activity done to oppose age discrimination is protected conduct under the ADEA. *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 615 (8th Cir.2003) (citing 29 U.S.C. § 623 (2002)); see also *Jeseritz v. Potter*, 282 F.3d 542, 548 (8th Cir.2002) (stating that the conduct must involve some kind of opposition to the employer's practice that the employee reasonably believes violates the statute); *Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir.2002) (same). Hiring an attorney to represent you when you believe you are being discriminated against based upon your age is protected activity under the ADEA. *Connell v. Bank of Boston*, 924 F.2d 1169, 1179 (1st Cir. 1991).

■ In this case, Ambers hired an attorney to review the July 25 agreement. She went to this attorney because she wanted a couple of demands added. (Ambers 2–9–04 Depo. at 33–34) Plaintiff does not allege, nor is there any evidence before the Court, that she hired Attorney Senechal to represent her on an age discrimination claim. Since Ambers did not hire an attorney to oppose age discrimination, she did not engage in protected activity. *Trammel*, 345 F.3d at 615.

■ Plaintiff argues that she engaged in activity to oppose age discrimination when Attorney Senechal informed the Village of the twenty-one day consideration provision in the OWBPA. Informing an employer of a provision in the OWBPA does not, by itself, constitute an act done to oppose age discrimination. See *White-*

*head v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1191 (10th Cir.1999) (stating that the OWBPA does not determine in the first instance whether age discrimination has occurred). Therefore, Attorney Senechal's July 30 letter is also not a protected activity. *Id.*

■ However, even assuming Ambers had presented a prima facie case of retaliation under the ADEA and the NDHRA, the Village presented a legitimate nondiscriminatory reason for her termination, and Ambers can not establish that this reason was a pretext. Once the plaintiff establishes a prima facie case, her employer may still prevail on a summary judgment motion if it can establish a legitimate nondiscriminatory reason for the adverse employment action. *Kneibert v. Thomson Newspapers, Michigan Inc.*, 129 F.3d 444, 454 (8th Cir.1997). The employer's burden is merely one of production, not persuasion. *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 478 (8th Cir.2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

■ The Village alleges that it terminated Ambers because she was unable to perform to the Village's expectations of a manager. The Village produced two employee complaints about Ambers' management style. (Def. Exs. 1 & 2) Ambers agreed that Johnson's complaint about her management actions was legitimate. (Ambers 12–18–03 Depo. at 100–01) Vacek's report noted that Ambers did not challenge any of Ruth's criticisms of Ambers' management. (Vacek Depo. Ex. 4) The Village has met its burden of producing evidence of a legitimate nondiscriminatory reason for the termination.

■ If the employer establishes a nondiscriminatory reason, the plaintiff may still defeat summary judgment if she can

establish that the reason given was a pretext for retaliation. *Kneibert,* 129 F.3d at 454. One way to establish pretext is through strong evidence that the plaintiff was performing her job satisfactorily. *Cherry v. Ritenour Sch. Dist.,* 361 F.3d 474, 479 (8th Cir.2004). Plaintiff has not produced any evidence of this. The evidence before the Court presents the opposite picture. As discussed above, there were complaints about Ambers' management. In addition, Ambers had difficulty balancing the budget and handling all of her responsibilities. (Meshefski Depo. at 19; Wolsky at 33–34) She also asked Wolsky repeatedly for a smaller workload despite the fact that others in her position with larger offices appeared to have no problem getting their work done. (Wolsky Depo. at 33–34)

Another method to demonstrate pretext is by showing that similarly situated persons under the age of forty received more favorable treatment. *Cherry,* 361 F.3d at 479. In order to be similarly situated, these individuals must "have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (quoting *EEOC v. Kohler Co.,* 335 F.3d 766, 775 (8th Cir.2003)). In this case, Plaintiff did not present evidence that a similarly situated individual was treated differently.

Plaintiff argues the following three facts demonstrate prejudice: 1) only after the Village terminated Ambers did the Village learn of Ambers management problems, 2) Johnson's letter came after Johnson resigned, and 3) Vacek never recommended termination. The timing of Johnson's letter does not detract from the complaints she made, and the Court fails to see how this demonstrates pretext. While the Village learned more about the extent of Am-

bers' management problems after she was terminated, it already had two complaints from employees before it terminated Ambers. In addition, evaluations of Ambers revealed problems with her management. (Wolsky Depo. at 20) The Court also fails to see how the fact that Vacek did not recommend termination demonstrates pretext. As her employer, the Village was entitled to a different opinion than Vacek on the appropriate action to take based on the information it possessed.

Ambers has not presented a prima facie case of retaliation under the ADEA or the NDHRA because she did not engage in protected activity. However, even assuming she had presented a prima facie case, the Village produced complaints about Ambers' management activities that would rebut a prima facie case, and Ambers has not produced any evidence that the Village's reason for termination was a pretext.

## II. North Dakota Whistleblower Claim

The North Dakota Whistleblower statute prohibits an employer from terminating an employee when that employee, in good faith, reports a violation, or suspected violation, of federal or state law or rule to an employer, to a governmental body, or to a law enforcement official. *Dahlberg v. Lutheran Soc. Servs.,* 625 N.W.2d 241, 252 (N.D.2001) (quoting N.D. Cent.Code § 34–01–20(1) (1997)). The statute allows an employee to bring a civil action for retaliatory discharge. *Id.* at 253. The elements for a retaliatory discharge are the same as in the preceding analysis: 1) the employee engaged in protected activity; 2) the employer took an adverse employment action against the employee; and 3) there is a causal link between the protected conduct and the adverse employment action. *Id.* An employee engages in protected activity when she reports, in good faith, a violation or

suspected violation of federal or state law to her employer. *Id.*

Ambers alleges that she engaged in protected activity when the July 30 letter from her attorney informed her employer that federal law gave her twenty-one days, instead of only five days, to consider its offer. First, as a matter of contract law, there was no offer before Ambers when the July 30 letter was written and sent to the Village. A response to an offer that introduces new conditions or terms constitutes a rejection of the offer. *Berg v. Lien,* 522 N.W.2d 455, 456 (N.D. 1994) (quoting 17 C.J.S. Contracts § 43 (1963)). In response to the Village's July 25 offer, Ambers requested new conditions. (Wolsky Depo. Ex. 10) This constituted a rejection. *Berg,* 522 N.W.2d at 456. After rejecting the offer, then Ambers informed the Village of her alleged right to twenty-one days to consider the offer. (Wolsky Depo. Ex. 12) Therefore, even under Plaintiff's interpretation of the OWBPA, Ambers was not entitled to twenty-one days because there was no offer to waive an ADEA claim.

However, even assuming there was an offer, Ambers did not engage in protected activity. When an employer asks an employee to waive her rights under the ADEA, the OWBPA provides several minimum requirements a court uses to determine whether the waiver was knowing and voluntary. *Ellison v. Premier Salons Int'l, Inc.,* 164 F.3d 1111, 1113 (quoting 29 U.S.C. § 626(f)(1) (1998)). One of these minimum requirements is whether the employee was given at least twenty-one days to consider the agreement. *Id.* (quoting 29 U.S.C. § 626(f)(1)). An employee may not waive her rights under the ADEA if the waiver is not knowing and voluntary. *Id.*

The twenty-one day provision only pertains to whether a waiver of an ADEA claim was knowing and voluntary. *Id.* at 1114. An employer's failure to give an employee twenty-one days to consider the waiver does not mean the employer violated federal law. It just means that if the employer attempted to enforce the waiver later, it would not hold up since it was not knowing and voluntary. *Whitehead,* 187 F.3d at 1191–92.

Plaintiff cites to two cases to argue that a violation of the OWBPA is a violation of the law. However, one of them, *Krane v. Capital One Services, Inc.,* 314 F.Supp.2d 589, 609–10 (E.D.Va.2004), merely states that a separate claim under the OWBPA may be brought in conjunction with a substantive claim under the ADEA. The other case, *Massachusetts v. Bull HN Information Systems,* 16 F.Supp.2d 90, 105–06 (D.Mass.1998), held that a plaintiff could have a separate claim under the OWBPA based upon that court's interpretation of Congress' intent and the legislative history.

Other courts have held that the OWBPA does not establish a separate claim. *Whitehead,* 187 F.3d at 1192; *Williams v. General Motors,* 901 F.Supp. 252, 254–55 (E.D.Mich.1995). The plain language of the OWBPA supports the conclusion that it does not establish a separate claim. See 29 U.S.C. § 626(f) (stating that the listed criteria must be met in order for the waiver to be knowing and voluntary). The Supreme Court also appears to agree with this interpretation. See *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (stating that the OWBPA "governs the effect under federal law of waivers or releases on ADEA claims . . . ."). Therefore, the Court holds that informing an employer of a provision in the OWBPA does not constitute protected activity under the North Dakota Whistleblower statute. Even as-

suming Plaintiff had engaged in protected activity, the preceding analysis on the Village's legitimate, nondiscriminatory reason for terminating her and her inability to demonstrate that it was a pretext would also apply here and provide a further basis for granting summary judgment.

DECISION

Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.