# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1941

_____

George D. Philip,               *
                                     *
         Plaintiff - Appellant,     *
                                     *   Appeal from the United States
     v.                           *   District Court for the District
                                     *   of Minnesota.
Ford Motor Company, a      *
Delaware Corporation,       *
                                     *
         Defendant - Appellee.     *

_____

Submitted: December 13, 2002

Filed: May 21, 2003 (corrected 6/12/03)

_____

Before HANSEN,[1] Chief Judge, LAY, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

George D. Philip appeals the district court's grant of summary judgment in favor of Ford Motor Company (Ford), on his claims of employment discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213; the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363.01-363.15; and Title VII

_____

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. We reverse in part and affirm in part.

I.

Philip, an African-American, worked for Ford at its Twin Cities Assembly Plant from April 25, 1988, until February 1998, when he was placed on "no work available" status. During his employment with Ford, Philip began experiencing various physical problems, including back pain and hand discomfort. His physicians diagnosed degenerative joint disease of the low back, spondylolisthesis and bilateral carpal tunnel syndrome. Accordingly, Philip's physicians restricted his use of vibrating air tools, overhead lifting and repetitive lifting.

During the 1990s, Ford placed Philip in various positions to accommodate his work restrictions. From 1996, until he was placed on no work available status, Philip worked in a 25-mile driver inspector job. The position involved test driving newly constructed vehicles and fell within Philip's medical restrictions. Ford contends Philip was removed from the position because it was reclassified from temporary to permanent, thereby making it subject to the collective bargaining agreement, and Philip did not have sufficient seniority to bid the reclassified position. Philip contends he was removed from the position in violation of the ADA and MHRA. He further contends Ford refused to place him in the job permanently because of his race.

Philip sued alleging religious discrimination, race discrimination, disability discrimination and retaliation. Ford moved for summary judgment, and on June 13, 2001, the district court dismissed Philip's claims of religious discrimination, retaliation, and in part his claim of race discrimination. The district court denied summary judgment as to Philip's ADA and MHRA claims, and his race discrimination claim to the extent Philip claimed Ford refused to grandfather him into the 25-mile driver inspector position. Later, Ford moved for reconsideration of the

-2-

district court's partial denial of summary judgment, arguing Philip had failed to make a prima facie showing of a disability as defined by the ADA. Ford also moved for reconsideration of the district court's refusal to dismiss the remaining race discrimination claim, arguing it was dependent upon a finding Ford was obligated under the ADA to offer a reasonable accommodation. Upon reconsideration, the district court granted summary judgment and dismissed Philip's remaining claims. The district court, relying on Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184 (2002), held Philip had failed to make a prima facie showing of a disability. The district court also dismissed Philip's race discrimination claim finding it was dependent upon a showing he was disabled under the ADA. Philip now appeals the district court's March 8, 2002, order granting Ford's motion for reconsideration.[2]

## II.

We review the district court's grant of summary judgment de novo. Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

### A. ADA/MHRA Claims.[3]

The ADA affords protection from discrimination to any "qualified individual with a disability." 42 U.S.C. § 12112(a). To establish a prima facie case of

---

[2]Philip has not appealed the district court's June 13, 2001, order granting partial summary judgment.

[3]Claims arising under the MHRA are analyzed using the same standard applied to ADA claims. Maziarka v. Mills Fleet Farm, Inc., 245 F.3d 675, 679 n.3 (8th Cir. 2001).

discrimination under the ADA, Philip must show 1) he has a disability within the meaning of the ADA, 2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation, and 3) he suffered an adverse employment action because of his disability. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc). The proof necessary for discrimination cases is flexible and varies with the specific facts of each case. Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1022 (8th Cir. 1998). The question presented in this case is whether Philip has shown he is disabled within the meaning of the ADA.

A disability is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). For purposes of this discussion, we assume Philip suffers from a physical impairment, that is, a "condition . . . affecting one or more . . . body systems . . . ." 29 C.F.R. § 1630.2(h). An impairment is "substantially limiting" if it renders an individual unable to perform a major life activity which the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working, 29 C.F.R. § 1630.2(i), as well as sitting, standing, lifting, and reaching. Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 948 (8th Cir. 1999). Several factors are considered in determining whether a person is substantially limited in a major life activity 1) the nature and severity of the impairment, 2) its duration or anticipated duration, and 3) its long-term impact. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Philip contends he is substantially limited in the major life activities of gripping, reaching, lifting, standing, sitting, walking, sleeping and sexual relations.

As a preliminary matter, Philip's response to the first summary judgment motion alleged substantial limitations in the major life activities of gripping, reaching,

lifting, standing, sitting and walking. Philip did not allege he was substantially limited in the major life activities of sleeping and sexual relations until Ford moved for reconsideration. The district court refused to consider the new allegations, holding "[d]iscovery in this case closed in September of 2000, and Philip is only now, for the very first time, making these allegations of sleep difficulties and sexual dysfunction. It is too late in the game for Philip to so radically alter the factual predicate for his claims." Appellant's Addendum 77.

Philip contends the district court erred when it rejected his affidavit containing the expanded list of substantially limited major life activities. He argues the district court's decision to grant reconsideration was based upon intervening Supreme Court precedent which he could not have anticipated, and until the decision in Williams, he had no reason to present evidence regarding the major life activities of sleeping and sexual relations. We disagree.

"[A] district court may exclude from evidence at trial any matter which was not properly disclosed in compliance with the Court's pre-trial order, and such a ruling will be reversed on appeal only for abuse of discretion." Dabney v. Montgomery Ward & Co., Inc., 692 F.2d 49, 51 (8th Cir. 1982) (quoting Iowa-Mo. Enters., Inc. v. Avren, 639 F.2d 443, 447 (8th Cir. 1981)). Once discovery has closed, it is within the district court's discretion whether or not to allow it to be reopened. Boardman v. Nat'l Med. Enters., 106 F.3d 840, 843 (8th Cir. 1997). Discovery in this case had been closed approximately 18 months. Ford had a right to timely disclosure of Philip's allegations, and the district court's refusal to allow the untimely disclosure was not an abuse discretion. Furthermore, Philip's contention that, prior to Williams, he had no reason to believe the information was relevant, is without merit.

Long before Williams, a plaintiff seeking to establish a prima facie case of discrimination was required to prove a disability within the meaning of the ADA, i.e., "a physical . . . impairment that substantially limits . . . the major life activities of [an]

individual." 42 U.S.C. § 12102(2)(A); see also Kiel, 169 F.3d at 1135. Philip was undoubtedly aware of this burden. Why he chose not to disclose sleeping and sexual relations as major life activities until 18 months after discovery closed is unknown. The untimely disclosure did not, however, have anything to do with Williams. Accordingly, our review is limited to Philip's claim that he is substantially limited in the major life activities of gripping, reaching, lifting, standing, sitting and walking.

In support of his disability claim, Philip presented evidence of his physical impairments, medical diagnoses and the work limitations imposed by his treating physicians. The district court determined Philip had failed to make a prima facie showing of disability because he could not simply rely on the effects his limitations had on work. Rather, under Williams, Philip had to show the limitations affected his ability to perform the variety of tasks central to most people's daily lives. 534 U.S. at 200-201. Because Philip does not claim to be limited in the major life activity of working, and yet his evidence was limited to work-related tasks, we believe the district court's grant of summary judgment was correct.

To be substantially limited in the life activity of working, a plaintiff must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Inability to perform one particular job does not constitute a substantial limitation on working. Id. Instead, a plaintiff must show that because of his impairment he has suffered a significant reduction in meaningful employment opportunities. Webb v. Garelick Mfg. Co., 94 F.3d 484, 488 (8th Cir. 1996).

To be substantially limited in the life activity of performing manual tasks a plaintiff "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Williams, 534 U.S. at 198. To prove disability, plaintiffs must submit more than just

evidence of a medical diagnosis of an impairment. Id. "Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" Id. at 198 (quoting Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999)). In other words, the relevant inquiry when addressing the major life activity of performing manual tasks is "whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job." Id., at 200-201. The type of evidence most relevant to establishing a substantial limitation in the major life activity of performing manual tasks, includes, for example, an individual's ability to do household chores, bathe, brush one's teeth, prepare meals, do laundry, etc. Id. at 201-203.

We recognize Williams dealt only with the proof necessary to establish a substantial limitation in the major life activity of performing manual tasks. Nevertheless, we find its premise equally applicable to Philip's claims involving the major life activities of gripping, reaching, lifting, standing, sitting and walking. In opposition to Ford's motion for summary judgment, Philip presented evidence of his physical impairments, medical diagnoses and work limitations. He focused solely on the effect his limitations had on work-related activities, e.g., his inability to operate a glue gun on a repetitive basis and his inability to operate vibrating or air tools. Conversely, Philip cited no examples of how the limitations impacted tasks central to most people's daily lives. Indeed, Philip testified he mows his own grass, operates a weed whacker, and walks up and down stairs without difficulty. He is able to dress, groom and feed himself, as well as wash his car by hand, barbeque, and bend down to tie his shoes. Finally, Philip works out occasionally on a treadmill or stationary bike, and uses a small dumbbell to do crunches, leg-lifts and squats. Because Philip has failed to make a prima facie showing of disability under the ADA or MHRA, the district court's grant of summary judgment on those claims is affirmed.

B.    Title VII Race Discrimination Claim.

The district court construed Philip's claim of race discrimination as a claim Ford refused to provide a reasonable accommodation to his physical disability because of race. The district court summarily dismissed the claim, finding Philip was not disabled within the meaning of the ADA and consequently Ford had no obligation to provide a reasonable accommodation. To the extent Philip bases his race discrimination claim on Ford's alleged refusal to provide him a reasonable accommodation, we agree with the district court's grant of summary judgment. We disagree, however, with the district court's narrow construction of Philip's race discrimination claim.

In response to Ford's motion for summary judgment, Philip argued the refusal to place him permanently in the 25-mile driver inspector position was discriminatory for two reasons. First, Ford's refusal violated the ADA's requirement to provide a reasonable accommodation. See Appellee's App. 301-302. While Philip contends Ford's refusal to provide a reasonable accommodation was motivated by racial animus, the claim is not dependent upon proof of racial bias. The reasonable accommodation claim necessarily fails, however, because Philip failed to prove he has a disability within the meaning of the ADA.

Second and distinct from his ADA claim, however, Philip contends Ford's refusal to place him in the permanent position was racially motivated. Philip points to two similarly situated white employees who were grandfathered into the position despite their lack of seniority, and argues Ford's refusal to grant him a similar exception was due to race. Id. This latter claim is in no way dependent upon Philip proving he is covered under the ADA. See Austin v. Minn. Mining & Mfg. Co., 193 F.3d 992, 995 (8th Cir. 1999) (holding to establish a prima facie case of racial discrimination, a plaintiff must show he 1) was a member of a protected group, 2) was meeting the legitimate expectations of his employer, 3) suffered an adverse

employment action, and 4) similarly situated employees, who are not members of the protected group, were treated differently).

Ford argues the district court's dismissal should nevertheless be affirmed because the two white employees were not similarly situated. Ford did not assert this argument as a basis for summary judgment, and the district court has not been given an opportunity to consider the question. Therefore, we will not consider it on appeal.

## III.

Accordingly, we reverse the district court's judgment with respect to Philip's claim of race discrimination as outlined herein and remand for further proceedings. With respect to all of Philip's other claims, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.