# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3560

_____

Gene Trammel,

      Appellant,

v.

Simmons First Bank of Searcy,

      Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the Eastern
\*   District of Arkansas.
\*
\*
\*

_____

Submitted: April 14, 2003

Filed: September 23, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Gene Trammel appeals an order of the district court[1] granting summary judgment to Simmons First Bank of Searcy (Simmons) in his action alleging discrimination under the Age Discrimination in Employment Act (ADEA), *see* 29 U.S.C. §§ 621-634. He also contends that the district court should have granted his motion to recuse. We affirm.

---

[1]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

I.

We first address Mr. Trammel's recusal motion. At the deposition of the bank president, Brooks Davis, Mr. Trammel's attorney learned that Mr. Davis and one of the district judge's law clerks, who had begun work two days earlier, were friends and attended the same weekly Bible study class. Mr. Trammel then moved to recuse the judge based on the "appearance of impropriety."

We review a denial of a motion to recuse for an abuse of discretion. *See Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) (en banc). Under 28 U.S.C. § 455(a), the district judge was required to "disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." Mr. Trammel acknowledged, however, that the judge never had a professional or personal relationship with Mr. Davis, and the court assured the parties that the law clerk had not had and would not have "any involvement whatsoever" with the court's handling of the case. We therefore do not believe that the district court abused its discretion in ruling that recusal was not required because (as the court found) a "reasonable person with the full knowledge of all relevant facts would not conclude that [the court's] impartiality might be impaired," *see Veneklase v. City of Fargo*, 236 F.3d 899, 902 (8th Cir. 2000) (Bye, J.).

II.

We review the district court's grant of summary judgment *de novo*. *Mitchell v. Iowa Prot. & Advocacy Serv., Inc.*, 325 F.3d 1011, 1013 (8th Cir. 2003). We will uphold the judgment if the evidence, "viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003).

Mr. Trammel worked for Simmons and its predecessor bank for about ten years as a loan officer and a senior vice president. According to Mr. Trammel's brief,

"problems began between" him and Mr. Davis in mid-2001, when Mr. Trammel "complained about" an account of The Big Ragoo, a restaurant owned by friends of Mr. Davis. Mr. Trammel testified at his deposition that he did not believe that a "direct loan" from Simmons to The Big Ragoo should have been "converted" to a loan that was guaranteed by the Small Business Administration (SBA). Mr. Trammel contacted both the SBA and the Arkansas State Banking Department (ASBD) raising questions about this loan and other matters and asking that Simmons be investigated.

Mr. Trammel wrote to the ASBD in February 2002, stating that he was "follow[ing] up" on a previous report to the agency. (According to another letter to the ASBD, he had "reported" what he "considered to be improper use of the SBA [loan] program" to the agency in November 2001.) In the February letter, he indicated that Simmons was diverting "SBA funds to cover other accounts" and "refund[ing] thousands of dollars to [] buddies while charging all small depositors, in some cases their next week pay for NSF [non-sufficient-funds] charges."

In early March, after Mr. Trammel had a meeting with Mr. Davis and the senior credit officer, Jerry Morgan, about repossession procedures, Mr. Morgan wrote a memorandum to the human resources director of the bank's holding company. In this memorandum, Mr. Morgan recited that when the meeting was over Mr. Trammel called him to say that he had uncovered a conspiracy to divert loan proceeds and was therefore afraid that an owner of the Big Ragoo account would harm him or his family, and that he had reported his fears to the Federal Bureau of Investigation. Mr. Trammel agreed at his deposition that this conversation had taken place. He further testified that (contrary to Mr. Morgan's memorandum) he (Mr. Trammel) had not said in the conversation that Mr. Davis was involved in a scheme to defraud the bank. But he testified that he had accused Mr. Davis of participating in a scheme to defraud the federal government (although he did not recall whether he said this to Mr. Morgan). About two days after Mr. Trammel's conversation with Mr. Morgan, he was placed on administrative leave with pay.

-3-

Shortly after Mr. Trammel's leave began, the SBA wrote a letter to the bank's holding company in which it alluded to receiving reports from a Simmons employee. The agency stated that Simmons was found to be "Substantially in Compliance" based on a planned review that had been conducted in December. The letter also notes that the SBA review "coincided" with phone calls that it received from a Simmons employee alleging possible "improprieties" in some of the bank's SBA portfolio, but that the SBA had found that "there were no improprieties involved."

In his brief, Mr. Trammel cites as evidence of harassment the fact that Mr. Davis returned a check to him for insufficient funds, accused him of wanting to be president of the bank, and met with him about his "loan loss summaries" even though they were satisfactory. Mr. Davis wrote a letter to Mr. Trammel in December 2001, listing areas of his performance that "must improve," and the next February Mr. Trammel was evaluated as "need[ing] improvement to meet performance expectations."

Mr. Davis sent Mr. Trammel a letter in April 2002, notifying him that he was being discharged because of his "inexplicable behavior at work, which resulted in [his] administrative leave with pay." According to the letter, "[t]his behavior in conjunction with the other performance issues we have been addressing leave us no other choice in the matter." Younger employees took over the loans that Mr. Trammel had been servicing.

### III.

Where, as here, the plaintiff does not offer direct evidence of age discrimination, we have applied the *McDonnell-Douglas* burden-shifting framework to the claim. *See Mayer v. Nextel West Corp.*, 318 F.3d 803, 806-07 (8th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). Under this framework, Mr. Trammel must first establish a *prima facie* case, which requires,

*inter alia*, that he show that he suffered an "adverse employment action."  *See, e.g., Simonson v. Trinity Reg'l Health Sys.*, 336 F.3d 706, 710 (8th Cir. 2003).

For purposes of summary judgment, the bank does not dispute that Mr. Trammel met his burden of establishing a *prima facie* case, although it contends that the only adverse employment action was Mr. Trammel's discharge, which (Simmons says) was for a legitimate non-discriminatory reason.  Mr. Trammel argues that he suffered an adverse employment action because he was harassed by Mr. Davis on account of his age, but having carefully reviewed the facts upon which Mr. Trammel bases this claim, we find it to be without merit.  Nothing in the record links Mr. Trammel's age to comments or criticism allegedly made by Mr. Davis to Mr. Trammel or to the return of Mr. Trammel's check.  Nor do we believe that the alleged harassment was "so severe or pervasive as to alter the conditions of [Mr. Trammel's] employment and create an abusive working environment."  *See Breeding v. Arthur J. Gallagher & Co.*, 164 F. 3d 1151, (8th Cir. 1999) (internal quotations omitted); *cf. Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998).

With respect to the discharge claim, assuming, as did Simmons, that Mr. Trammel presented a *prima facie* case, the bank offered a "legitimate, non-discriminatory reason" for terminating Mr. Trammel–that he accused the bank president of fraud.  *See Girten v. McRentals, Inc.*, 337 F.3d 979, 981-82 (8th Cir. 2003) (internal quotations omitted).  In response, Mr. Trammel failed to show that the reason given by Simmons was pretextual.  *See id.* at 982.  Mr. Trammel admitted to accusing Mr. Davis of defrauding the federal government, and relied for what he termed his state "whistle-blower" claim (which the district court dismissed without prejudice) on an allegation that he was fired at least in part for accusing Simmons, under Mr. Davis's leadership, of violating bank laws.  We also note that Mr. Trammel did not offer evidence that any similarly situated employee who was younger than he was treated more favorably.  Although, as part of his *prima facie* case, Mr. Trammel presented evidence that significantly younger employees assumed his duties after he

was discharged, this evidence alone is insufficient to allow his claim to survive the bank's summary judgment motion. *See McKay v. United States. Dep't of Transp.*, No. 02-1934, 2003 WL 21998965 (8th Cir. Aug 25, 2003).

We note that the Supreme Court recently held that under the current language of Title VII, *see* 42 U.S.C. § 2000e-2 (m), a plaintiff may be entitled to a mixed-motive jury instruction without presenting direct evidence of discrimination if he or she shows that discrimination was a "motivating factor" in the adverse employment decision. *See Desert Palace, Inc. v. Costa*, 123 S. Ct. 2148, 2155 (2003). In the past we have required direct evidence, which is not present here, to support a mixed-motive claim. *See Thomas v. First Nat'l Bank of Wynne,* 111 F.3d 64, 65-66 (8th Cir. 1997). But even if we assume, without deciding, that the holding in *Costa* applies to ADEA claims, we do not believe that this helps Mr. Trammel because he has presented insufficient evidence to support a finding that his age was a "motivating factor" in the decision to discharge him.

Mr. Trammel also claims that the bank retaliated against him in violation of the ADEA. Mr. Trammel filed a charge with the Equal Employment Opportunity Commission (EEOC) in November 2001, alleging harassment based on age. After he was terminated, he filed another EEOC charge, contending that he was placed on leave and discharged in retaliation for filing the earlier charge. To establish a *prima facie* case of retaliation, Mr. Trammel had to show that he "participated in a protected activity," that the bank "took an adverse employment action against [him]," and that there was a causal relationship between the two. *See Calder v. TCI Cablevision of Mo., Inc.*, 298 F.3d 723, 731 (8th Cir. 2002).

We disagree with Mr. Trammel's contention in his brief that writing letters to agencies accusing Simmons of improper loan procedures was protected activity under the ADEA. Mr. Trammel did not write these letters to oppose age discrimination, which is the conduct that the ADEA protects. *See* 29 U.S.C. § 623.

Mr. Trammel did participate in protected activity, however, when he filed his first EEOC charge on November 27, 2001. To prevail on his retaliation claim, he must show that because he filed the EEOC charge, Simmons took an adverse employment action against him, i.e., an action that produced a "material employment disadvantage," *Cross v. Cleaver*, 142 F.3d 1059, 1073 (8th Cir.1998). Mr. Trammel first contends that an adverse employment action occurred when he received a letter on December 7, 2001, stating that certain "areas of [his] performance must improve for [him] to continue in [his] current position." We believe, however, that Mr. Trammel's own testimony precludes an inference that the letter was written in retaliation for his EEOC charge. In his deposition, Mr. Trammel agreed that the letter "was a legitimate assessment of some things that [he] needed to do as an employee" and that there was nothing "inappropriate about it."

Mr. Trammel also maintains that Simmons retaliated against him when it gave him an evaluation in February 2002 stating that he needed to improve "to meet performance expectations," when it placed him on administrative leave, and when it discharged him. We are aware that in some circumstances negative evaluations, in combination with other conduct, have been found to amount to adverse employment action. *See, e.g., Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir.1997). But even if we assume that the February evaluation was part of an adverse employment action, we note that Mr. Trammel received the evaluation more than two months after he filed the EEOC charge. Another month passed before he was placed on leave, and about a month later he was fired. In none of these instances does Mr. Trammel offer any evidence to show a causal connection between the EEOC charge and the action taken by Simmons, and we conclude that the time interval of more than two months is too long to support an inference of causation. *See Kipp v. Missouri Hwy. & Transp. Comm.*, 280 F.3d 893, 897 (8th Cir. 2002); *Nelson v. J. C. Penney Co.*, 75 F.3d 343, 346-47 (8th Cir. 1996).

We also note that Mr. Trammel himself has argued that Simmons took these "adverse employment actions" because of his accusations of improper loan procedures by the bank. For all of the reasons stated, we do not believe that Mr. Trammel offered sufficient evidence to support his retaliation claims.

Accordingly, we affirm the decision of the district court.

_____