**Daniel J. DIDIER Plaintiff**

v.

**SCHWAN FOOD COMPANY and Schwan's Home Service, Inc. Defendants**

No. 04–2233.

United States District Court, W.D. Arkansas, Ft. Smith Division.

Sept. 21, 2005.

Kevin Richmond Holmes, Alma, AR, for Plaintiff.

Alan L. Rupe, Wichita, KS, Michael Richard Bond, Fayetteville, AR, S. Douglas Mackay, Wichita, KS, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

DAWSON, District Judge.

Plaintiff brings this action against his former employer contending that Defendants discriminated against him in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq. and the Arkansas Civil Rights Act of 1993. (Doc. 1). Specifically, Plaintiff contends he was terminated due to his alleged disability and that Defendants refused to provide him with "reasonable accommodations" that would allow him to perform his job despite his alleged disability. Plaintiff further alleges a state law claim of breach of contract. Currently before the Court is Defendant's motion for summary judgment. (Doc. 16). Also before the Court is Defendants' Unopposed Motion for Continuance of the Trial Setting. (Doc. 27).

## I. BACKGROUND

Except where noted, the following facts are not disputed. Plaintiff began working for Defendants as an "On–the–Job–Training Route Sales Manager" (OJT) in 1991. After completing his training, Plaintiff assumed the position of Route Sales Manager where his duties included selling and delivering frozen food and other products to customers' homes or businesses while operating a Schwan route truck. The position required Plaintiff to carry up to 10 pounds for a variable distance of 100 feet or less, manipulate a handheld computer, and open and close the heavy freezer doors on a repetitive basis. Plaintiff was also required to lift and carry up to 30 pounds for a variable distance of 100 feet or less.

In 1994, Plaintiff injured his hands and wrists when he fell from a set of steps at a customer's home. Plaintiff aggravated the injury to his right wrist in 1996, which required surgery. At that time, Schwan placed Plaintiff on Temporary Alternative Duty (TAD) as his injuries prevented him from performing the essential functions of the job of Route Sales Manager. According to Defendants, TAD is a company program that allows an employee to remain employed in a light duty position after an injury with the intention that the employee return to his or her regular position. Plaintiff eventually returned to his position and earned a promotion to Sales Manager of the Van Buren, Arkansas depot in 1997.

As a Sales Manager, Plaintiff hired and trained new employees, primarily OJT Route Sales Managers. In training new employees, Plaintiff was required to operate route trucks and to assist the trainees with their duties, to include loading and unloading the trucks. Defendants contend that as Sales Manager, Plaintiff was subject to the same physical requirements as the employees he supervised. Plaintiff contends he was not subject to the same requirements but, in any event, was capable of training the employees using his left hand.

In September 2002, Plaintiff required additional surgery as a result of the 1996 injury. Following the surgery, Plaintiff returned to his Sales Manager position with modified duties; specifically, he was not required to run a route truck or train the OTJs on a route truck.

In February 2003, Plaintiff was placed on TAD until his next physician's appointment on June 9, 2003. During that time, Plaintiff applied for two other Sales Manager positions, but was not offered either position. Plaintiff contends that in February 2003 when he was placed on TAD that

he was fully able to perform the essential functions of the job of Sales Manager.

On June 9, 2003, Plaintiff's physician released him to return to work without restrictions. On June 30, 2003, Defendants offered Plaintiff a position as a Route Sales Manager in the Van Buren depot. At that time, Plaintiff declined the offer, because he stated he could not perform the essential functions of the position. Defendants offered to send Plaintiff for a functional capacity evaluation (FCE) to re-evaluate Plaintiff's condition.

On July 23, 2003, the Arkansas Specialty Hand Therapy Center conducted an FCE on Plaintiff. In correspondence dated September 24, 2003, Dr. Weber advised that Plaintiff had reached maximum medical improvement with permanent restrictions that included no lifting above ten pounds, and "no truck routes." These restrictions precluded Plaintiff from performing the essential functions of the Route Sales Manager position he was offered. Plaintiff was offered an opportunity to apply for other positions within the company but he failed to do so.

On November 13, 2003, Defendants advised Plaintiff they would be terminating his employment effective January 1, 2004. Plaintiff contends he was terminated because Defendants either could not or would not accommodate his permanent restrictions.

Plaintiff contends that Defendants intentionally discriminated against him on the basis of his disability by placing him on TAD even though he was performing the "essential functions" of the Sales Manager position and in making no attempt to accommodate his disability. Defendants contend that Plaintiff is not a qualified individual with a disability. Defendants further contend that Plaintiff admittedly is unable to perform at least 10% of the essential job functions of the Sales Manager position and that being forced to eliminate that portion of the job does not constitute a reasonable accommodation. Defendants move for summary judgment, arguing that Plaintiff is not disabled within the meaning of the ADA.

## II. DISCUSSION

In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Nat'l. Bank of Commerce of El Dorado, Arkansas v. Dow Chem. Co.,* 165 F.3d 602 (8th Cir.1999). If the plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which it will bear the burden of proof at trial, then the defendant is entitled to judgment as a matter of law and all other facts are rendered immaterial. *See Thelma D. By and Through Delores A. v. Bd. of Educ.,* 934 F.2d 929, 932 (8th Cir.1991).

The ADA prohibits covered employers from discriminating against individuals on the basis of their disabilities. *See* 42 U.S.C. § 12112(a). Specifically, it prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Plaintiff contends that Defendants failed or refused to accommodate his disability, therefore we apply a modified burden-shifting analysis. *Fenney v. Dakota, Minnesota & Eastern Railroad Co.*, 327 F.3d 707 (8th Cir.2003) (citations omitted). Under this standard, Plaintiff "at all times retains the burden of persuading the trier of fact that he has been the victim of illegal discrimination due to his disability." *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108 (8th Cir.1995). Thus, Plaintiff must first make a showing that he has an ADA disability and that he has suffered adverse employment action.

 To establish a discrimination claim under the ADA, Plaintiff must show (1) he has an ADA-qualifying disability, (2) he is qualified to perform the essential functions of his position with or without reasonable accommodation, and (3) Defendants took adverse action against him because of his disability. *Ristrom v. Asbestos Workers Local 34 Joint Apprentice Committee*, 370 F.3d 763 (8th Cir.2004). The issue before the Court is whether Plaintiff has sufficiently alleged a "disability," which is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff does not contend a record of impairment or that he was regarded as having an impairment. We therefore address whether Plaintiff has an impairment that substantially limits a major life activity.

An impairment is "substantially limiting" if it renders an individual unable to perform a major life activity which the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). The Equal Employment Opportunity Commission regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). The following factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Plaintiff contends that, due to the injuries to his right hand, he is substantially limited in his ability to care for himself.

 To be substantially limited in the life activity of caring for oneself a plaintiff "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Philip v. Ford Motor Co.*, 328 F.3d 1020 (8th Cir.2003). To prove disability, a plaintiff must submit more than just evidence of a medical diagnosis of an impairment. *Id.* "Instead, the ADA requires those 'claiming the Act's protection...to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience...is substantial.'" *Id.* The type of evidence most relevant to establishing a substantial limitation in the major life activity of performing manual tasks, includes, for example, an individual's ability to do household chores, bathe, brush one's teeth, prepare meals, do laundry, etc. *Id.*

According to Plaintiff, he suffers from a permanently broken right arm. (Doc. 23, Ex. E, p. 82). In an affidavit submitted in opposition to Defendants' summary judgment motion, Plaintiff contends he has "difficulty" shaving, brushing his teeth,

grooming, cleaning himself, wiping after a bathroom visit, and feeding himself with a spoon. (Doc. 23, Ex. A). Plaintiff further averred he has difficulty dressing himself in some instances. *Id.* Plaintiff admitted in his deposition that he has learned to shave and comb his hair and "pretty much does everything else" with his left hand. (Doc. 23, Exhibit E, p. 80). Plaintiff stated that he cannot mow his lawn but does wash dishes by hand. (Doc. 23, Ex. A). Plaintiff further testified:

Q. Are you able to shave?

A. Yes, sir.

Q. Your hair also looks good, at least as good as mine. Are you able to set your hair yourself?

A. Yes, sir.

Q. Were you able to dress yourself to appear today?

A. Yes, sir. I learned to shave and comb my hair and everything left-handed.

Q. Okay. You can tie your own shoes?

A. Yes, sir.

Q. ...as far as the household chores, do you occasionally take the trash out?

A. Yes.

Q. Cook dinner?

A. Yes.

Q. Do any of the washing? And I'm talking either loading the dishwasher, the washing machine.

A. No. I don't do the—I do the dish washing, because I like soaking my wrist in the hot water.

Q. As far as a weedeater, you can use a weed eater with limited use of full use?

A. Limited.

Q. Okay.

A. We've got a strap on it.

Q. And when you've got a shoulder strap, you're able to use it?

A. Yeah, for a little while, not very long.

*See* Deposition of Daniel Didier, Doc. 23, Ex. E, pp. 79–80, 105.

In an FCE dated June 25, 2002, it was noted Plaintiff reported he was independent in his activities of daily living but that it was difficult to shave and brush his teeth with his right hand. (Doc. 23, Ex. B). Another FCE dated July 23, 2003, noted that Plaintiff reported all ADL activities were painful and difficult with his right hand but he could accomplish them with his left hand. (Doc. 23, Ex. C). Such general statements in affidavits and depositions are conclusory and insufficient to withstand a properly supported motion for summary judgment. *See Berg v. Bruce,* 112 F.3d 322 (8th Cir.1997); *Herrero v. St. Louis Univ. Hosp.,* 109 F.3d 481 (8th Cir.1997). But even if Plaintiff's testimony is true, by Plaintiff's own admission he is able to dress himself, tie his shoes, comb his hair, prepare meals, wash dishes, etc. Further, he is able to perform other ADL activities, such as shaving and brushing his teeth, with his left hand. Thus, while Plaintiff does have some medically imposed restrictions, he has not met his burden of showing that the extent of his limitations due to his impairment are "substantial" in terms of caring for himself. Therefore, he does not have a disability as defined under the first prong of the ADA and the ACRA.[1]

---

**1.** The definition of disability in both the ACRA and the ADA are in all relevant respects the same. *See Faulkner v. Arkansas Children's Hospital,* 347 Ark. 941, 69 S.W.3d 393 (2002); *Land v. Baptist Medical Center,* 164 F.3d 423 (8th Cir.1999).

**992**

### III. CONCLUSION

Based on the foregoing, the Court concludes that Plaintiff has failed to establish a "disability" as defined under the ADA. Plaintiff has therefore failed to satisfy the first element of a prima facie case under the ADA. Therefore, the Court finds Defendants' Motion for Summary Judgment should be and hereby is GRANTED. Accordingly, Plaintiff's claims pursuant to the ADA and ACRA are DISMISSED WITH PREJUDICE and the remaining cause of action based upon state law is DISMISSED WITHOUT PREJUDICE. Plaintiff's case is DISMISSED in its entirety, each party to bear its own costs. Defendants' motion for continuance (Doc. 27) is DENIED AS MOOT.