#28092-r-DG
**2018 S.D. 51**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JOYCE RIGGS,                                                   Appellant,

    v.

BENNETT COUNTY
HOSPITAL & NURSING HOME,                                      Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK BARNETT
Judge

* * * *

DONALD P. KNUDSEN of
Gunderson, Palmer, Nelson
  & Ashmore LLP
Rapid City, South Dakota                          Attorneys for appellant.


MICHAEL M. HICKEY
KELSEY B. PARKER of
Bangs, McCullen, Butler, Foye
  & Simmons LLP
Rapid City, South Dakota                          Attorneys for appellee.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 28, 2017
OPINION FILED **06/27/18**

#28092

GILBERTSON, Chief Justice

[¶1.] Bennett County Hospital and Nursing Home (the Hospital) terminated the employment of Joyce Riggs and subsequently opposed her claim for unemployment benefits. Riggs filed a complaint alleging the Hospital's opposition to her unemployment claim was retaliation for her earlier request for permission to bring a companion dog to work. The South Dakota Department of Labor's Division of Human Rights (DHR) determined there was not probable cause to believe Riggs's allegations, and the circuit court affirmed. Riggs appeals. We reverse the circuit court's affirmance. We neither affirm nor reverse DHR's decision, but we remand back to DHR for further consideration.

**Facts and Procedural History**

[¶2.] Riggs worked for the Hospital from March 2006 until her termination in March 2015. At the time of her dismissal, Riggs was employed full time as a central-supply technician and part time as an emergency medical technician for the Hospital's ambulance service. Riggs's immediate supervisor in her role as a central-supply technician was Katie Dillon; in Riggs's role as an emergency medical technician, her supervisor was her husband, Alfred Riggs. Ethel Martin was the Hospital's chief executive officer at the time of Riggs's dismissal.

[¶3.] Riggs suffers from depression and post-traumatic stress disorder. Previously, she has used a companion dog to help manage her symptoms. After Martin became CEO in 2012, however, the Hospital adopted a more restrictive policy regarding pets in the workplace. At the time, according to Riggs, she

informally requested permission to continue bringing her pet to work, but the Hospital denied her request.

[¶4.]        On January 13, 2015, Riggs formally requested the Hospital permit her to bring her companion dog to work.  To support her request, Riggs submitted a form completed by her psychiatrist, Dr. Lyle P. Christopherson.  On the form, Dr. Christopherson indicated that Riggs suffered from depression and post-traumatic stress disorder and that Riggs's depression had worsened since 2012. Dr. Christopherson recommended that the Hospital grant Riggs's request and permit her to bring her dog to work.

[¶5.]        On January 21, 2015, a committee consisting of Martin, Dillon, and Judy Soderlin (the Hospital's chief financial officer) met to consider Riggs's request. In a letter sent to Riggs and dated January 28, the committee indicated that in considering her request, it took into account the duties of Riggs's position, her current job performance, her two most recent performance evaluations, her attendance record over the past year, any previous complaints or concerns Riggs expressed to her supervisors describing her difficulties, and Riggs's medical documentation.  In analyzing these factors, the letter stated:

> The Committee found no change in employment duties, actual improvement in [Riggs's] two most recent job performance evaluations which were both at acceptable levels, excellent attendance, no complaints or concerns presented to [Riggs's] supervisor related to [her] ability to perform specific tasks, no decline in ability or extreme reactions when in stressful situations, good ability to multi-task, no verbal or written warnings of unsatisfactory job performance over the past year, and no substantial impairment of any major life activity or function.

Based on these findings, the committee denied Riggs's request for accommodation. The letter advised Riggs of her right to appeal the committee's decision within 30 calendar days. Dillon delivered the letter and a copy of the Hospital's grievance policy to Riggs. According to Dillon, Riggs reacted by throwing the policy in a drawer, slamming the drawer, cursing, and then walking away.

[¶6.]    Following the committee's denial of Riggs's request, Riggs's relationship with the Hospital's management became increasingly strained. According to Martin, Riggs would not communicate with Martin or respond to Martin's directions. According to Dillon, Riggs came to Dillon's office on February 4, 2015, upset that Martin had terminated another employee. Riggs referred to Martin as a "bitch" and said she hoped a family member of the terminated employee would beat Martin "so bad she can never do anything to anyone again."

[¶7.]    On February 26, 2015, Riggs interrupted a meeting of the Hospital's board of directors, demanding review of the denial of her request. Because Riggs had not followed procedure to be placed on the agenda, the board's president instructed Riggs to follow the Hospital's grievance procedure. He told Riggs she could be placed on the agenda for a board meeting the following week. Riggs stomped out of the room, slammed the door, and could be heard yelling as she walked away.

[¶8.]    On March 2, 2015, Martin and Dillon approached Riggs to speak with her about her workplace behavior. Riggs responded by covering her ears with her hands and repeatedly saying, "No." Riggs left the office and went to the break room, and Martin and Dillon followed. Riggs called her husband and told him that "it was

an emergency" and that "they had her cornered." Following Riggs's refusal to speak with Martin and Dillon, Martin made the decision to terminate Riggs's employment for insubordination and failure to follow Hospital policy. Later that morning, Martin found a letter in her mailbox that appeared to be an appeal from the decision to deny Riggs's request. And on March 11, Riggs's husband delivered a letter to the Hospital from Riggs appealing the decision to terminate her employment.

[¶9.] On March 12, 2015, Riggs applied to the South Dakota Department of Labor, Division of Unemployment Insurance (DUI), for unemployment benefits. DUI notified the Hospital of Riggs's claim on March 13. The Hospital filed a response on March 16. Two days later, a DUI investigator contacted the Hospital and spoke with Martin regarding Riggs's claim. Martin provided DUI with documentation on Riggs's termination. DUI ultimately concluded the Hospital had terminated Riggs for work-related misconduct. Consequently, DUI denied Riggs's request for unemployment benefits, and Riggs appealed.

[¶10.] On March 16, 2015, Riggs filed her first charge of discrimination with DHR. Riggs alleged the Hospital terminated her employment because she asked for permission to bring her dog to work. According to Riggs, this action was discrimination in violation of the Americans with Disabilities Act. The Hospital received notice of Riggs's complaint on March 18, the same day DUI contacted Martin regarding Riggs's termination.

[¶11.] On April 20, 2015, Administrative Law Judge (ALJ) Shannon George-Larson considered Riggs's appeal of DUI's denial of her request for unemployment

benefits. Martin represented the Hospital at the hearing, and both she and Dillon testified. On April 28, ALJ George-Larson entered findings of fact and conclusions of law affirming DUI's decision. ALJ George-Larson found that the Hospital terminated Riggs because she "knowingly refused to follow [the Hospital's] grievance policy when she appeared at the Board meeting on February 26," she "knowingly refused to speak to Martin and Dillon," and she "deliberately slammed doors to show anger and disrespect toward her supervisors."

[¶12.] On July 31, 2015, DHR determined there was probable cause to believe the allegations in Riggs's first charge of discrimination. Riggs declined to engage in conciliation and elected to pursue the matter as a civil action. On August 3, Riggs filed a second charge of discrimination with DHR, alleging the Hospital's opposition to Riggs's unemployment claim was retaliation for engaging in protected activity. On December 1, DHR determined there was not probable cause to believe the allegations in Riggs's second charge of discrimination. Riggs appealed DHR's decision regarding her second charge of discrimination to the circuit court. On December 23, 2016, the court affirmed DHR's decision.

[¶13.] Riggs now appeals to this Court, raising the following issue: Whether DHR erred in determining there was not probable cause to believe the Hospital's opposition to Riggs's claim for unemployment benefits was retaliatory.

**Analysis and Decision**

[¶14.] Riggs argues the Hospital opposed her claim for unemployment-insurance benefits as retaliation for filing her first charge of discrimination and for requesting permission to bring her pet to work. According to Riggs, the Hospital

violated both the Americans with Disabilities Act (ADA) and the South Dakota Human Rights Act (SDHRA). The ADA and the SDHRA each prohibit an employer from retaliating against an employee who engages in activity protected under those enactments. *See* 42 U.S.C. § 12203 (2012); SDCL 20-13-26. Under the SDHRA, DHR is empowered to "receive, investigate, and pass upon charges alleging unfair or discriminatory practices." SDCL 20-13-28. When conducting such an investigation, DHR assesses "[t]he likelihood that discrimination occurred . . . based upon evidence that establishes a prima facie case, and if the respondent has provided a viable defense, whether there is evidence of pretext." SDCL 20-13-1.1.[1]

[¶15.]     In this case, DHR concluded Riggs failed to establish a prima facie case. "A retaliation claim under the ADA [or SDHRA] requires a but-for causal connection between the employee's assertion of her . . . rights and an adverse action by the employer." *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133 S. Ct. 2517,

---

1.     SDCL 20-13-1.1 prescribes the same burden-shifting framework articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under the *McDonnell Douglas* framework, the employee has the initial burden of establishing a prima facie case. *See id.* at 802, 93 S. Ct. at 1824. This requires "show[ing] (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the two." *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016). Success "creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981). "The burden then must shift to the employer to articulate some legitimate, [nonretaliatory] reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824. Finally, if the employer articulates such a reason, the burden returns to the employee, who must "be afforded a fair opportunity to show that [the employer's] stated reason for [its action] was in fact pretext." *Id.* at 804, 93 S. Ct. at 1825.

2528, 186 L. Ed. 2d 503 (2013)). Relying on cases that hold a time interval of two months or more between protected activity and adverse employment action is usually insufficient to support an inference of causation, *e.g.*, *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003); *Kipp v. Mo. Hwy. & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002), DHR concluded that Riggs failed to show a causal connection between her January 13, 2015 request for accommodation and the Hospital's March 18, 2015 communication with DUI. Thus, DHR determined there was not probable cause to believe the Hospital retaliated against Riggs.

[¶16.]      Riggs contends DHR failed to consider her March 2, 2015 letter appealing the denial of her request for accommodation and her March 11 letter asking the Hospital to reconsider its decision to terminate her employment.[2] Neither DHR's written decision nor its summary of facts indicate whether DHR

---

2.    Riggs also claims that her interruption of the February 26, 2015 board meeting, her March 16 charge of discrimination alleging the Hospital discharged her for requesting an accommodation, and the Hospital's receipt of Riggs's first charge of discrimination on March 18 were also protected activities. While appealing adverse employment action may be protected activity generally, interrupting a board meeting is not. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) ("Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace."). And the filing of Riggs's first charge of discrimination on March 16 could not have had any causal connection to the Hospital's decision to oppose her unemployment-insurance claim until the Hospital received notice of that charge on March 18. But DHR found that the Hospital's opposition to Riggs's unemployment-insurance claim occurred before the Hospital received notice of Riggs's first charge of discrimination. A review of the record does not create "a definite and firm conviction" that this finding is erroneous. *Winegeart v. Winegeart*, 2018 S.D. 32, ¶ 17, 910 N.W.2d 906, 912. Thus, while Riggs's March 2 and March 11 letters could support a prima facie case, these other events do not.

considered (or was even aware of) Riggs's March 2 and March 11 letters in concluding that she failed to establish a prima facie case of retaliation. And while DHR's decision indicates the Hospital articulated a legitimate reason for terminating Riggs (i.e., misconduct), the decision does not indicate whether DHR considered this viable defense or whether there was evidence of pretext, as required by SDCL 20-13-1.1. Therefore, DHR's decision is incomplete, and the circuit court's affirmance was premature.

## Conclusion

[¶17.] The circuit court's affirmance of DHR's decision is reversed. DHR's decision is neither affirmed nor reversed, but the case is remanded back to DHR for further proceedings. On remand, DHR should consider Riggs's March 2 and March 11 letters, the Hospital's articulated reason for terminating Riggs, and any evidence of pretext.

[¶18.] ZINTER and KERN, Justices, and SEVERSON and WILBUR, Retired Justices, concur.

[¶19.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.